Los Jueces Asociados Señores Rebollo López y Hernández Denton no intervinieron.

PUEBLO INTERNATIONAL, INC., ETC., apelados, *v.* HÉCTOR RIVERA CRUZ, en su carácter oficial de SECRETARIO DE JUSTICIA, ETC., apelantes.

*Número:* CE-86-430      *Resuelto:* 3 de julio de 1986

*Rafael Ortiz Carrión, Procurador General, Lorenzo Vilanova Alfonso, Procurador General Auxiliar,* abogados del apelante Héctor Rivera Cruz, Secretario de Justicia; *Carlos M. Rivera Vicente* e *Iván Garau Díaz,* de *Cancio, Nadal & Rivera,* abo-

[18] Para una crítica sobre este tema véase R. J. Torres Torres, *Como la Mujer del César,* 2 Forum 24 (enero–marzo 1986).

gados de la apelante Asociación de Mayoristas, Importadores y Detallistas de Alimentos de Puerto Rico (MIDA); *Ramón Coto Ojeda, Manuel A. Guzmán* y *Samuel T. Céspedes,* de *Mc-Connell, Valdés, Kelley Sifre, Griggs & Ruiz Suria,* abogados del apelado Pueblo International, Inc.; *Rubén T. Nigaglioni,* de *Ledesma, Palou & Miranda,* abogado de los demandantes individuales; *Maritza Brugueras,* abogada de la Liga de Mujeres Votantes de Puerto Rico, Inc., *amicus curiae.*

## *RESOLUCIONES*

### RESOLUCIÓN

Luego de evaluar las mociones en auxilio de jurisdicción presentadas por el señor Procurador General y por la Asociación de Mayoristas, Importadores y Detallistas de Alimentos de Puerto Rico, el Tribunal provee no ha lugar a las mismas.

Lo acordó el Tribunal y certifica el Secretario General Interino. El Juez Presidente Señor Pons Núñez emitió un voto particular al cual se unieron los Jueces Asociados Señores Ortiz y Alonso Alonso. El Juez Asociado Señor Negrón García emitió un voto particular disidente, al cual se unió el Juez Asociado Señor Hernández Denton. La Juez Asociada Señora Naveira de Rodón concedería el remedio solicitado en las mociones en auxilio de jurisdicción.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

### RESOLUCIÓN

Examinados los escritos de apelación radicados por el señor Procurador General y por la Asociación de Mayoristas, Importadores y Detallistas de Alimentos de Puerto Rico, la sentencia emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, en el caso Civil Núm. 86-430, *Pueblo International, Inc. et al.,* demandantes, v. *Héctor Rivera Cruz*

*et al.*, demandados, se aceptan los recursos de apelación por plantear una cuestión constitucional sustancial.

Lo acordó el Tribunal y certifica el Secretario General Interino.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Voto disidente del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Hernández Denton.

## I

En auxilio de nuestra jurisdicción, discrecionalmente procederíamos a paralizar los efectos del decreto de inconstitucionalidad.

Bajo el criterio jurídico de escrutinio mínimo aplicable en el ámbito de reglamentación económica, *Vélez* v. *Srio. de Justicia*, 115 D.P.R. 533 (1984); *Marina Ind., Inc.* v. *Brown Boveri Corp.*, 114 D.P.R. 64, 80–83 (1983); *U.S. Brewers Assoc.* v. *Srio. de Hacienda*, 109 D.P.R. 456, 461–462 (1980); *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 277 (1975), es cuestionable que dicho dictamen pueda prevalecer.

La sabiduría de una ley, o su obsolescencia o impopularidad social [1] no constituyen fundamentos válidos en apoyo de su inconstitucionalidad por la Rama Judicial.

"Nuestras recientes decisiones prescriben claramente que esta Corte no funciona como una superlegislatura para pesar la sabiduría de la legislación o para decidir si la política que expresa está en pugna con el bienestar público. El poder legislativo tiene sus limitaciones, según resuelve el caso de

---

[1] "La distinción de las leyes en odiosas o favorables, con el propósito de restringir o extender sus disposiciones, no puede ser hecha por aquellos cuyo deber es interpretarlas." Art. 21 del Código Civil, 31 L.P.R.A. sec. 21.

*Tot* v. *United States,* 319 U.S. 463. Pero las asambleas legislativas estatales tienen autoridad constitucional para experimentar con nuevas técnicas; tienen derecho a sus propias normas de bienestar público; pueden dentro de amplísimas limitaciones controlar las prácticas en el campo obrero-patronal, mientras las prohibiciones constitucionales específicas no sean infringidas y mientras se eviten conflictos con las leyes federales válidas y predominantes." *Marina Ind., Inc.* v. *Brown Boveri Corp.,* supra, pág. 81; *A. Roig, Sucrs.* v. *Junta Azucarera,* 77 D.P.R. 342, 356 n. 18 (1954).

## II

La controversia en nuestra jurisdicción en torno a la aplicación de la Ley de Cierre no es nueva. Su validez ha sido planteada previamente ante nos y resuelta de manera favorable. *García* v. *Municipio de Humacao,* 57 D.P.R. 532 (1940); *El Pueblo* v. *García & García,* 22 D.P.R. 817 (1915). En época más reciente, véase la sentencia emitida por este Tribunal el 30 de junio de 1982, en *The Grand Union Company, et al.* v. *Giménez Muñoz, et al.* (Casos Núm. O-81-32; O-80-677 y O-80-705).

En el ámbito federal, en *McGowan* v. *Maryland,* 366 U.S. 420 (1961), el Tribunal Supremo de Estados Unidos declaró válida una ley de cierre de establecimientos comerciales, muy similar al estatuto puertorriqueño. Dicho foro se reiteró en su visión de esta controversia constitucional en *Two Guys* v. *McGinley,* 366 U.S. 582 (1961).

## III

Corresponde a la Asamblea Legislativa auscultar la opinión pública y evaluar los distintos planteamientos de los sectores interesados —industriales, obreros, consumidores y otros— para luego determinar si su anacronismo relativo requiere derogar total o parcialmente determinado estatuto. Véanse *Pueblo* v. *Saldaña,* 69 D.P.R. 711, 716 (1949); *McCormick* v. *Marrero, Juez,* 64 D.P.R. 260, 267 (1944); *M.*

*Taboada & Co.* v. *Rivera Martínez, Comisionado*, 51 D.P.R. 253, 258–273 (1937).

En la medida en que se presume la constitucionalidad de los estatutos, detectamos que la Ley de Cierre de Establecimientos Comerciales —Núm. 306 de 15 de mayo de 1938, según enmendada, (2)— está cimentada en promover, hasta lo posible, la existencia del domingo como determinado día de descanso, y por ende, la integridad física del trabajador y la unidad del núcleo familiar. *El Pueblo* v. *García & García*, supra, págs. 820–822. Independientemente de que su aplicación afecte adversamente algunos intereses económicos de ciertos negocios o restrinja limitadamente el empleo de jóvenes estudiantes y otras personas, estimamos que la apelación del Estado plantea una cuestión constitucional sustancial con probabilidad de prevalecer en los méritos. Sin prejuzgar definitivamente sus planteamientos, el Estado ha demostrado en esta etapa, en el balance de equidades, unos valores residuales comunitarios que proyectan un interés de superior jerarquía susceptible de ser interpretado como que propende a la vindicación de la ley y a un propósito legítimo público. *Peña* v. *Federación de Esgrima de P.R.*, 108 D.P.R. 147, 154 (1978). (3)

Con respeto a otros criterios en contrario, en consideración a los factores enunciados, paralizaríamos los efectos de la sentencia recurrida.

—O—

Voto particular del Juez Presidente Señor Pons Núñez, al cual se unen los Jueces Asociados Señores Ortiz y Alonso Alonso.

---

(2) 33 L.P.R.A. sec. 2201 *et seq.*

(3) Al evaluar los recursos en sus distintas etapas, este Tribunal nunca ha tenido una visión restrictiva del Derecho como la que se expone para sostener la negativa a paralizar la sentencia apelada. Véase la Regla 12 de Evidencia.

Trata este incidente procesal sobre una moción en auxilio de jurisdicción, presentada ante este Tribunal, en la que el señor Secretario de Justicia de Puerto Rico, el señor Superintendente de la Policía de Puerto Rico y el señor Director de la Oficina de Asuntos Monopolísticos del Departamento de Justicia de Puerto Rico (los demandados apelantes) solicitan que ordenemos "la inmediata paralización de la Sentencia e [*Injunction*] Permanente apelada hasta tanto este Honorable Tribunal dilucide finalmente la constitucionalidad de la Ley de Cierre". Presumimos que lo que se nos solicita es que suspendamos los efectos y detengamos la ejecución de la sentencia dictada por el tribunal de instancia en este caso, la cual decretó la inconstitucionalidad del Art. 553 y ss. del Código Penal de Puerto Rico, conocidos o denominados, en conjunto, Ley de Cierre de Establecimientos Comerciales, 33 L.P.R.A. sec. 2201 y ss., y en consecuencia ordenó, en síntesis, a los demandados apelantes que se abstengan de poner en vigor dichos artículos del Código Penal.

La moción que consideramos es secuela de un escrito de apelación presentado para solicitar de este Tribunal la revocación, en su día, de la sentencia dictada por el tribunal de instancia. En la moción se plantean tres cuestiones. Citamos de las págs. 2 y 3.

A. La mera presentación de un recurso de apelación interrumpe los efectos de una Sentencia e [*Injunction*] emitido por un Tribunal de Primera Instancia en que se declara la inconstitucionalidad de una ley y se ordena a los demandados apelantes a abstenerse de poner en vigor dicha ley.

B. A[u]n cuando este Honorable Tribunal entendiese que la mera presentación de un recurso de apelación no interrumpe los efectos de una Sentencia e [*Injunction*] fundados en el dictamen de inconstitucionalidad de una ley, en el caso de autos se cumple con todos los requisitos dispuestos en *Peña* v. *Federación de Esgrima*, para la expedición de una orden en auxilio de jurisdicción dejando sin efecto el [*Injunction*].

C. La expedición de una orden, en auxilio de jurisdicción se justifica aún más, en un caso como el de autos en que la Sentencia e [*Injunction*] apelados no sólo afecta a las partes en el pleito, sino que se le confiere aplicabilidad general me- diante el recurso procesal de certificación de clase.

Tratamos a continuación dichas cuestiones.

## I

No encontramos base alguna para sostener que la mera presentación de un escrito de apelación ante este Tribunal tenga el efecto de suspender los efectos de una sentencia en que se decreta, por un tribunal de primera instancia, la inconstitucionalidad de una ley. Tampoco tiene el efecto de enervar la eficacia de cualquier *injunction* permanente que se emita en razón de tal sentencia. No encontramos apoyo para ello en los casos que citan los demandados apelantes —*E.L.A.* v. *Aguayo*, 80 D.P.R. 552 (1958); *P.I.P.* v. *E.L.A.*, 109 D.P.R. 685 (1980)— ni las citas que se traen a nuestra atención de los debates y procedimientos de nuestra Asamblea Constituyente. De hecho entendemos que un análisis más amplio del Diario de Sesiones de la Asamblea Constituyente en cuanto a la aprobación del Art. V, Sec. 4 de nuestra Constitución arroja un resultado distinto al que nos plantean los demandados apelantes. Véase, por ejemplo, la contestación del delegado don Ernesto Ramos Antonini al delegado don Jaime Benítez. Citamos:

> [L]a información es en el sentido de que esta limitación de que aquí se habla se refiere exclusivamente al Tribunal Supremo, es decir, que el Tribunal Supremo para declarar anticonstitucional o inconstitucional, según se resuelva finalmente por esta Convención, una ley deberá cubrir el requisito numérico de que habla el artículo sin que para nada se entienda ni debe entenderse, y así deberá constar en las deliberaciones de esta Convención respecto del poder de otros tribunales para declarar anticonstitucional o inconstitucional una ley. Estamos hablando del Tribunal Supremo nada

más y a él nada más es que nos referimos para limitar su facultad, no para limitar la facultad o el poder judicial del poder judicial en general. 3 Diario de Sesiones de la Convención Constituyente 1639 (1952).

La norma que pretenden los demandados apelantes que adoptemos en realidad acarrea, por lo menos, el debilitamiento del poder de los tribunales de instancia para decretar la inconstitucionalidad de las leyes. "El remedio extraordinario de *injunction* se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico." *Peña* v. *Federación de Esgrima de P.R.*, 108 D.P.R. 147, 154 (1978).

## II

El segundo planteamiento de los apelantes es a los efectos de que toda vez que su solicitud en auxilio de jurisdicción cumple con los requisitos que en *Peña* v. *Federación de Esgrima de P.R.*, supra, decidimos deben satisfacerse, debemos suspender los efectos y detener la ejecución de la sentencia apelada. Allí decidimos, a la pág. 154:

> La solicitud para detener (*stay*) la ejecución de la sentencia en los casos de *injunction*, bien se radique en instancia o en el tribunal de apelación, va dirigida a su discreción y deberá satisfacer los siguientes requisitos: (a) que el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos de la apelación; (b) que demuestre que a menos que se detenga la ejecución sufrirá daño irreparable; (c) que ningún daño substancial se causará a las demás partes interesadas, y (d) que la suspensión de la sentencia no perjudica el interés público. (Citas omitidas.)

Entiendo que la moción en auxilio de jurisdicción ante nos no satisface esos requisitos. Veamos.

En cuanto a la probabilidad de prevalecer en los méritos de la apelación, todo lo que se indica es que "el estado de dere-

cho vigente reconoce una gran deferencia de parte del poder judicial a la reglamentación económica aprobada por la Legislatura, cuando ello no afecte derechos fundamentales. Nuestra ley fundamental no reconoce derecho constitucional alguno a hacer negocios ni a trabajar durante los 7 días de la semana". Moción, pág. 6.

No tenemos criterio definitivo en cuanto a la constitucionalidad del estatuto en controversia. Los apelantes tienen el peso de convencer al Tribunal, en esta etapa, de que tienen "un caso fuerte de probabilidad de prevalecer en los méritos de la apelación". No lo hacen. Meramente formulan conclusiones vacías y generales. Se afirma que el estatuto en cuestión es de reglamentación económica cuando éste no tiene una sola disposición en ese sentido y sólo contiene disposiciones de naturaleza penal. ¿Es esa la ley que establece una reglamentación económica cuando sólo contiene disposiciones penales o es la Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 y ss., y en especial sus Arts. 4 y 5 (29 L.P.R.A. secs. 273 y 274), la que establece dicha reglamentación en cuanto a establecimientos que no deben permanecer abiertos al público por disposición legal?

No mencionan la relación que puede tener con la Ley Núm. 379, *supra*, ni discuten la relevancia de que ésta no incorpore específicamente por referencia la Ley de Cierre. Existen también casos en que se ha decretado la inconstitucionalidad de leyes semejantes. Véase, por ejemplo, que el Tribunal Supremo de Connecticut decretó la inconstitucionalidad de un estatuto que exigía el cierre de ciertos establecimientos y determinó que el estatuto allí en controversia era de naturaleza penal. *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 417 A.2d 343 (Conn. 1979). Ni ese ni ningún otro caso sobre este aspecto se discute en la moción en auxilio de jurisdicción. La moción tampoco contiene los planteamientos que se hacen en el voto particular de los distinguidos compañeros Jueces Negrón García y Hernández Denton; ni tan siquiera hace refe-

rencia a los casos por ellos citados ni a la naturaleza y contornos de la reglamentación a que ellos se refieren. Nótese que aun cuando en dicho voto se presume el propósito de reglamentación económica de la Ley de Cierre, también se dice que la misma "está cimentada en promover, hasta lo posible, la existencia del domingo como determinado día de descanso, y por ende, la integridad física del trabajador y la unidad del núcleo familiar". Ello de por sí puede imponer otro análisis.

Los apelantes no cumplen con el requisito de demostrar que tienen un "caso fuerte de probabilidad de prevalecer en los méritos de la apelación", pues sus afirmaciones carecen de contenido legal y fáctico.

Nuestro derecho es rogado y corresponde a las partes hacer los planteamientos que fueren menester.

En cuanto al segundo requisito establecido en *Peña* v. *Federación de Esgrima de P.R.*, supra, pág. 154, esto es, que se "demuestre que a menos que se detenga la ejecución sufrirá daño irreparable", los demandados apelantes también han fallado en su moción. Sobre este aspecto no surge que los demandados apelados presentaran prueba ante el tribunal de instancia. Su argumento realmente se contrae a alegar genéricamente que en "la forma y manera en que la Asamblea Legislativa ha decidido reglamentar la actividad económica comercial estaría susceptible de seguir sufriendo l[a]s [variaciones] de órdenes judiciales contradictorias". Moción en auxilio de jurisdicción, pág. 6. Aun cuando tal fuere el caso, lo cual no creemos, entendemos que ello no constituiría un daño irreparable. Ahora bien, los vaivenes en este asunto no pueden propiamente atribuirse a los tribunales. Por el contrario, dichos vaivenes son, a mi juicio, directamente atribuibles a la ambivalencia de los demandados apelantes o de su representado, el Estado. Basta recordar que en relación con la apelada Pueblo International, Inc. (Pueblo), un tribunal de instancia ordenó preliminarmente al Estado, el 3 de febrero de 1981, que desistiera de poner en vigor la llamada

Ley de Cierre. Luego de fallar en lograr revocar el estado de derecho creado por esa orden, el Estado lo acató. Subsiguientemente en varias ocasiones el Estado reiteró que toda vez que la Ley de Cierre, según enmendada en 1983, ordenaba la adopción de un reglamento y que éste no había sido adoptado, dicha ley no tenía vigencia jurídica, pues no se podía implantar. El 6 de septiembre de 1985 teniendo pendiente una conferencia en dicho tribunal de instancia para el 9 de septiembre y un señalamiento para juicio en octubre, el Estado, mediante moción, repitió ese argumento, entre otros, e indicó al tribunal que por razón de ello el estatuto no se implantaba, por lo que resultaba innecesaria la orden de *injunction* preliminar de 3 de febrero de 1981. El 10 de marzo de 1986 el Estado reiteró que la Ley de Cierre no se implantaba, ya que el reglamento ordenado no se había adoptado, aun cuando el día anterior efectivos del Estado intervinieron con diecinueve establecimientos de Pueblo, interrogaron a los gerentes, tomaron fotos e hicieron advertencias sobre las operaciones dominicales. Sorpresivamente, el 25 de marzo de 1985, el Estado anunció en la prensa del país que en lo sucesivo la Ley de Cierre se haría cumplir, cuando para entonces todavía no se había adoptado el reglamento.

La ambivalencia y los vaivenes no han caracterizado a los tribunales, sino al Estado en la controversia sobre la Ley de Cierre. Mal puede el Estado ahora pedir protección por supuestos daños que su propia conducta causa.

Sobre el tercer criterio expuesto en *Peña* v. *Federación de Esgrima de P.R.*, supra, esto es, que ningún daño sustancial se causará a las demás partes interesadas, la situación resulta igual a la referente al criterio anterior, en cuanto a la prueba se refiere, con el agravante de que las partes apeladas sí probaron que sufrirían daños mientras continuase vigente la Ley de Cierre. Véase Civil Núm. 86-2716 (902), págs. 16–20. Es de notar también que los apelantes afirman sin más que no existe derecho fundamental alguno a trabajar igno-

rando que ese derecho fue reconocido por este Tribunal en *Amy* v. *Adm. Deporte Hípico*, 116 D.P.R. 414, 421 (1985). Allí indicamos que:

> El derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas.

Finalmente, el cuarto elemento de los que requiere *Peña* v. *Federación de Esgrima de P.R.*, supra, es a los efectos de que la suspensión de la sentencia no debe perjudicar el interés público. Aun cuando los demandados apelantes no discuten específicamente este punto, y por tanto tampoco han satisfecho este requisito, podemos presumir que aun si se cumple con él, por las razones antes expuestas, no se satisfacen suficientemente los criterios de *Peña* v. *Federación de Esgrima de P.R.*, supra, como para que en nuestra discreción suspendamos los efectos de la sentencia de *injunction* y detengamos su ejecución.

Añaden los demandados apelantes el argumento de que no "es posible obviar el principio cardinal de separación de poderes", y que "[e]l caso de autos constituye un vivo ejemplo de una clara violación de dicho principio". Ésta es otra afirmación genérica sin contenido, pues los demandados apelantes en esta etapa no nos han puesto en condiciones de determinar la probabilidad de que ello sea así. Debemos recordar que ya el tribunal de instancia ha resuelto en forma contraria en cuanto a las pretensiones de los demandados apelantes. También alguna deferencia amerita esa determinación y los apelantes no discuten ni plantean el efecto que la determinación específica de inconstitucionalidad hecha por el tribunal de instancia tiene en cuanto a la presunción genérica de la constitucionalidad de los estatutos.

Por último, debemos señalar que no se ha presentado razón alguna para sustentar que a los apelantes se les deba relevar de cumplir con los requisitos de *Peña* v. *Federación de*

*Esgrima de P.R.*, supra, ni de que exista razón alguna que valide tal relevo cuando esas reglas obligan a otros litigantes tal vez con menos recursos y con necesidades más apremiantes. Nótese que de suspenderse los efectos de la sentencia y detener su ejecución, los demandados apelantes estarían exentos de prestar la fianza requerida por la Regla 57.6 de las de Procedimiento Civil, y que tampoco podríamos requerirles otras condiciones para garantizar a los apelados una compensación adecuada por los daños que pudieran sufrir, en caso de que en su día confirmáramos la sentencia apelada.

No quiere decir lo anterior que estemos expresando una opinión definitiva sobre los asuntos a que este caso se contrae. Sólo significa que en esta etapa no se ha puesto a este Tribunal en condiciones de discrecionalmente suspender temporalmente los efectos de la sentencia y detener su ejecución.

## III

Sobre la tercera cuestión planteada creemos que basta con señalar que la misma constituiría error a plantearse, según fuere el caso, en el escrito de apelación o en un recurso de revisión. No se ha hecho. Tampoco se unieron a la moción los documentos pertinentes para que este Tribunal pueda evaluar los méritos de este señalamiento.

## IV

Formulado ya este voto, se ha recibido en el Tribunal otro escrito de apelación y otra moción en auxilio de jurisdicción presentados por la Asociación de Mayoristas, Importadores y Distribuidores de Alimentos de Puerto Rico, Inc. (MIDA). Esta última moción complementa la anterior a que nos hemos referido y trata más ampliamente algunas de las cuestiones que hemos señalado. Sin embargo, entendemos que la misma no lo hace en forma suficiente para ameritar que ordenemos la suspensión temporal de los efectos de la sentencia y detengamos su ejecución.

Por todo ello es que se debe proveer no ha lugar a las mociones en auxilio de jurisdicción.