GILBERTO PEÑA, RUBÉN HERNÁNDEZ y JUAN S. PEÑA, demandantes y recurridos, *v.* LA FEDERACIÓN DE ESGRIMA DE PUERTO RICO, INC., demandada y recurrente.

Número: R-78-329          Resuelto: 6 de diciembre de 1978

148

*Julio Eduardo Torres,* abogado de la parte recurrente; *Noel J. Torres Colón,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La eficacia inmediata del auto de *injunction,* característica esencial de este remedio legal extraordinario, ha sido frustrada en nuestra jurisprudencia desde que se sostuvo en *Muñoz* v. *Montañez,* 37 D.P.R. 318, 320 (1927), que el *injunction* "debe regirse por la ley general sobre ejecución de sentencias y apelaciones" por no estar comprendido entre las excepciones a la regla(¹) de que la apelación interpuesta

---

(¹) Art. 297, Código Enjuiciamiento Civil

"Formalizada una apelación, producirá el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, o a las cuestiones comprendidas en ella, pero la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación." 32 L.P.R.A. sec. 1284.

Art. 298, Código de Enjuiciamiento Civil

"La formalización de un recurso de apelación suspende los procedimientos en la corte inferior en cuanto a la sentencia u orden apelada, salvo cuando dispusiere la venta de cosas susceptibles de pérdida o deterioro, en cuyo caso la corte inferior podrá ordenar que se vendan dichas cosas, de-

suspende todo procedimiento en la sala sentenciadora. Más de medio siglo(²) ha transcurrido sin que se haya rescatado el *injunction* de la parálisis impuesta por la citada doctrina y es llegado el momento de rectificación.

La Federación de Esgrima de Puerto Rico es una corporación de fines no pecuniarios, sostenida en gran parte con fondos públicos, cuyo objetivo es el fomento y difusión del deporte de esgrima en todo el país. Los demandantes recurridos Gilberto Peña, Rubén Hernández y Juan S. Peña son espadas, miembros de la Federación, a quienes ésta suspendió por seis meses a partir del 1° de marzo de 1978, como sanción por haber entregado un combate en la eliminatoria del equipo de espada celebrada el 19 de febrero de 1978, y en consecuencia privándoles de participación en las actividades de la Federación y en viajes a competencias fuera de Puerto Rico y negándoles el uso de sus equipos y dependencias. Los deportistas suspendidos instaron demanda de *injunction* ante la Sala de San Juan del Tribunal Superior, la que concluyó que la suspensión no se ajustó al debido proceso, entre otras razones, porque nunca se les citó ni oyó en audiencia donde pudieren rebatir el cargo y el 31 de mayo de 1978 dictó sentencia que en su parte dispositiva ordena:

". . . se declara con lugar el Injunction Permanente solicitado por los demandantes y se le ordena a la parte demandada que res-

---

positándose su importe hasta que dicte su sentencia la corte de apelación. Y salvo también, cuando la sentencia declare al demandado culpable de usurpación, intromisión o ilegal desempeño de un cargo público, civil o militar, en el Estado Libre Asociado. Y salvo asimismo, cuando la orden conceda o rehúse conceder, un cambio de lugar para la celebración del juicio." 32 L.P.R.A. sec. 1285.

(²) En *Municipio* v. *Corte*, 60 D.P.R. 171, 174 (1942), el entonces Juez de Distrito de Humacao Sr. Benjamín Ortiz instó a este Tribunal a revocar a *Muñoz* v. *Montañez*, sin éxito. Sin embargo, produjo una liberación parcial de la aplicación absoluta al *injunction* del efecto suspensivo de la apelación y resolvimos que la apelación no suspende el *injunction* de naturaleza *prohibitoria*, pero sí el mandatorio. La decisión remitió la subsistencia y eficacia del *injunction* a la habilidad semántica del magistrado, elaborando el texto de su orden con orientación prohibitoria o mandatoria, lo que es factible en la mayoría de los casos.

tituya en su calidad de miembros a los demandantes con todos los derechos y privilegios que los mismos disfrutaban antes del 1ro. de marzo de 1978. Se le ordena, además, que en dicha restitución se les provea a los demandantes todas las oportunidades que éstos hayan perdido para cualificar en competencia local, nacional e internacional que se celebre en o fuera del Estado Libre Asociado y en la cual participe la demandada. Se le apercibe a la demandada que el incumplimiento de lo aquí dispuesto conlleva desacato al Tribunal."

Como no cumpliera la Federación de Esgrima con el auto de *injunction*, limitándose a radicar una moción sobre determinaciones adicionales de hecho([3]) que interrumpe el término de revisión (Reglas 43.2 y 68.2 de Procedimiento Civil), los espadas demandantes solicitaron del Tribunal Superior que la castigara por desacato, y celebrada la vista sobre esta moción el 30 de junio de 1978 el Juez Sr. Peter Ortiz dictó resolución de la misma fecha declarando el *injunction* en vigor desde su notificación y la Federación incursa en desacato por lo que le impuso multa de $500, prevenida de arresto y encarcelamiento de su Presidente. ([4])

Desestimamos un recurso de apelación de la Federación demandada por no plantear cuestión constitucional sustancial pero acogimos su solicitud de revisión con orden para mostrar causa de 11 de octubre de 1978 que dispone:

"Los demandantes recurridos tendrán un término hasta el 1° noviembre, 1978 para comparecer a mostrar causa por la que no deba dejarse sin efecto la condena en desacato de la Federación

---

[3] La sala de instancia nunca la resolvió.

[4] Dice la resolución:

"Resolvemos que el Injunction en este caso está en vigor desde su notificación. Habiendo aceptado la demandada que no ha dado cumplimiento a la sentencia, la declaramos incursa en desacato y se le impone una multa de $500.00, la cual deberá ser depositada en el Tribunal en o antes del 3 de julio de 1978, o una fianza por dicha cantidad una vez se radique un Escrito de Apelación o recurso ante el Honorable Tribunal Supremo. De no así hacerlo, se ordenará el arresto y encarcelamiento del Presidente de la Federación de Esgrima, Lic. Roberto José Maldonado. 32 L.P.R.A. sec. 3533."

de Esgrima de Puerto Rico en vista de lo resuelto en *Municipio v. Corte,* 60 D.P.R. 171 (1942)."

La Federación recurrente limita su recurso a la impugnación de la condena por desacato basada en que la sentencia de *injunction* mandatorio no es firme ni ejecutoria. En la alternativa arguye que su conducta estuvo dirigida por el estado de derecho reflejado en *Municipio de Gurabo* v. *Corte,* 60 D.P.R. 171 (1942), y podría añadir *Las Monjas Racing Corp.* v. *Arandes & Grovas,* 52 D.P.R. 945 (1937), en los que este Tribunal adoptó la doctrina de que la apelación suspende la ejecución del *injunction mandatorio,* y excluye toda condena de desacato por su incumplimiento hasta que advenga firme, norma que no gobierna el *injunction* llamado *prohibitorio* el cual se ha considerado ejecutable desde su notificación. La distinción se hizo en *Municipio de Gurabo* supra, siguiendo una monografía publicada en 93 A.L.R. 709–723, a pesar de que el Art. 297 del Código de Enjuiciamiento Civil declara que formalizada la apelación "producirá el efecto de suspender todo procedimiento en la corte inferior"; y del Art. 298 del mismo cuerpo que niega efecto suspensivo a la apelación de sentencias en que se ordena la venta de cosas susceptibles de pérdida y deterioro, en casos de *quo warranto* sobre cargo público y en los de traslado, sin que la excepción se extienda al *injunction* en ninguna de sus modalidades. Véase escolio 1.

Igual rémora, aunque sólo en apariencia, al valor de actualidad y vigencia inmediata del *injunction* presentan la Regla 51 de Procedimiento Civil que pospone la ejecución hasta que la sentencia se convierte en firme, y el Art. 14 de la Ley de la Judicatura (4 L.P.R.A. sec. 37) en su disposición en cuanto a que la presentación de una solicitud de revisión o de un escrito de apelación suspenderá los procedimientos en el Tribunal Superior.

La actual Regla 62 Federal que conserva el principio común de que la apelación priva de jurisdicción al tribunal

de instancia, regula con especialidad el auto de *injunction*, en cuanto ahora nos concierne, en sus incisos (c) y (g) así:

(c) *Injunction pendiente la apelación*

"Cuando se apela o recurre de una sentencia final o interlocutoria concediendo, disolviendo o denegando un *injunction*, el Tribunal [de instancia] en el uso de su discreción podrá suspender, modificar, restituir o conceder un *injunction* durante la pendencia de la apelación bajo aquellos términos relativos a fianza y demás que estime adecuados para proteger los derechos de la parte contraria . . . .

(g) *Poder sin límite del Tribunal de Apelación*

Lo dispuesto en esta Regla no restringe la facultad del tribunal de apelación o de uno de sus jueces para paralizar los procedimientos por el tiempo que esté pendiente la apelación [o revisión]; o para suspender, modificar, restablecer o conceder un *injunction* mientras esté pendiente la apelación o para dictar cualquier orden adecuada para preservar el status quo o la efectividad de la sentencia que ha de emitirse en su día."

■ La Regla 62 (c) Federal que autoriza a la sala de instancia para suspender, modificar, restituir o conceder un *injunction* durante la pendencia de la apelación, lo mismo cuando ha denegado que cuando ha concedido el auto, no hace más que codificar el *poder inherente* ([5]) de los tribunales para dictar cuanta orden sea necesaria para mantener el status

---

([5]) "Por supuesto, la regla general es que cuando se apela, la corte de distrito pierde jurisdicción para toda ulterior acción en el caso pero el inciso (c) de la Regla 62 es una excepción a dicha regla general y un reconocimiento del por largo tiempo establecido derecho de la sala de instancia, una vez interpuesta la apelación, a dictar las órdenes apropiadas para preservar el *status quo* por el tiempo que el caso esté pendiente en la corte de apelación." *Newton* v. *Consolidated Gas Co. of New York*, 258 U.S. 165; 66 L.Ed. 538 (1922).

El inciso (c) de la Regla 62 omite referencia al tiempo específico en que la corte de distrito puede conceder dicho *injunction*, y estimamos que bajo elementales normas de interpretación, debe ahora sostenerse que esta autoridad de la corte de distrito continúa durante la pendencia de la apelación." *United States* v. *El-O-Pathic Pharmacy*, 192 F.2d 62, 79–80 (9th Cir. 1951) (Leading Case); Wright & Miller, *Federal Practice and Procedure*, Tomo 11, pág. 324.

quo y asegurar la efectividad de la sentencia que finalmente recaiga.

■ El remedio extraordinario de *injunction* se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. Su eficacia descansa en su naturaleza sumaria y en su pronta ejecución, por lo que una distinción entre el prohibitorio y el mandatorio aun cuando fundada en algo más que el manejo del léxico, menoscaba su capacidad de remedio. Su vigencia inmediata se inicia con la notificación de la sentencia.

■ A pesar de que esta reserva de poder en el tribunal de instancia nada resta a la facultad del tribunal de apelación para tomar similares medidas de paralización en auxilio de su jurisdicción, la autoridad para suspender los efectos de la sentencia y detener su ejecución (*stay*) debe residir también en la sala de instancia que por su contacto inmediato con la prueba, ayudada por la inspección ocular o reconocimiento judicial, de frecuente utilidad en casos de *injunction*, se halla en posición excepcional para ejercer el sano arbitrio entre los intereses, conveniencias y perjuicios de una y otra parte afectados por la concesión o denegación de efecto suspensivo a la sentencia.

■ La solicitud para detener (*stay*) la ejecución de la sentencia en los casos de *injunction*, bien se radique en instancia o en el tribunal de apelación, va dirigida a su discreción y deberá satisfacer los siguientes requisitos: (a) que el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos de la apelación; (b) que demuestre que a menos que se detenga la ejecución sufrirá daño irreparable; (c) que ningún daño substancial se causará a las demás partes interesadas, y (d) que la suspensión de la sentencia no perjudica el interés público. (*Virginia Petroleum Jobbers*

*Assn.* v. *F.P.C.*, 259 F.2d 921, 925; 104 U.S. App. D.C. 106 (1958), originó la regla que adopta Wright & Miller, Tomo 11, Sec. 2904, pág. 316.)

■ En observancia de esta regla y en su función básica de proteger el interés de todas las partes, y considerando que la suspensión (*stay*) de la sentencia no se da por razón de derecho y sí en ponderado ejercicio de discreción, el tribunal debe sopesar el beneficio que la suspensión representa para el perdidoso contra el daño que le irroga a la parte que ha obtenido el *injunction,* y si decide detener la ejecución mientras pende la apelación o revisión deberá requerir fianza *supersedeas* e imponer aquellas condiciones y salvaguardas que sin oprimir a una parte tampoco diluyan en laxitud el derecho de su adversario.

■ A la fecha en que se expidió el auto de *injunction* y luego cuando se le condenó por desacato regía en Puerto Rico, como hasta ahora, la doctrina de *Muñoz* v. *Montañez; Municipio de Gurabo;* y *Las Monjas Racing*, que negaba vigencia y valor ejecutable a la sentencia de *injunction* mandatorio hasta que adviniera firme, bien por transcurso del término de revisión o por su confirmación en grado apelativo. Aun cuando en retrospección nos parezca pueril la detención de un *injunction* con una simple moción para enmienda por adición a las determinaciones de hecho bajo la Regla 43.2 de Procedimiento Civil, estaba en su derecho entonces la recurrente Federación de Esgrima cuando presentó dicha moción preliminar a su recurso de revisión. Una parte puede depender del estado de derecho, y de la jurisprudencia que es una de sus fuentes, para guiar su conducta. *Puerto Rico Ilustrado* v. *Buscaglia, Tes.,* 64 D.P.R. 914, 937–38 (1945); *Claudio* v. *Cruz Aguila,* 84 D.P.R. 435, 440 (1962); *González* v. *Pueblo,* 71 D.P.R. 430, 435 (1950).

■ Esta situación nos obliga a anular la sentencia de desacato, a pesar de los correctos fundamentos de decisión del

juez de instancia respecto al problema procesal que anticiparon los de esta opinión. Atada como está a la cronología la exoneración por desacato, la misma no se extiende a futuro incumplimiento de la sentencia del Tribunal Superior. Quedan expresamente revocados, en cuanto sean incompatibles con lo ahora resuelto, los citados casos de *Muñoz* v. *Montañez; Municipio de Gurabo;* y *Las Monjas Racing.*

*Se expedirá el auto de revisión modificando la decisión de instancia al solo efecto de anular la condena en desacato, y así modificada, confirmada.*