EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Plaza Las Américas, Inc., Rose Land, S.E.  Peticionarias  v.  N & H, S.E. / Tienda Sedeco  Recurrida | Certiorari  2005 TSPR 203  165 DPR _____ |

Número del Caso: CC-2005-701

Fecha: 28 de diciembre de 2005

Tribunal de Apelaciones:

      Región Judicial de San Juan
      Panel III Especial

Panel integrado por su Presidenta, la Jueza Bajandas Vélez, el Juez Aponte Hernández y el Juez González Vargas.

Abogados de la Parte Peticionaria:

      Lcda. Maretsa Rodríguez Portela
      Lcdo. Daniel Matínez Oquendo

Abogado de la Parte Recurrida:

      Leonor Porrata-Doria

Materia: Construcción Ilegal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza Las Américas, Inc.,
Rose Land, S.E.

    Peticionarias

       v.                             CC-2005-701

N & H, S.E. / Tienda Sedeco

    Recurrida

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 28 de diciembre de 2005

En esta ocasión debemos examinar la facultad del Tribunal de Apelaciones para dejar sin efecto una orden de paralización permanente dictada al amparo del Artículo 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos. Aún cuando dichas órdenes son remedios estatutarios, exentos generalmente de la normativa aplicable al *injunction* tradicional, resolvemos que su vigencia post-apelativa debe adjudicarse mediante normas y métodos análogos a los que rigen la paralización de los interdictos en la etapa apelativa.

## I.

El 24 de junio de 2004, la Administración de Reglamentos y Permisos ("A.R.P.E.") emitió una Resolución aprobando un anteproyecto de construcción y autorizó la preparación de los planos de construcción correspondientes para la remodelación de un edificio cercano al centro comercial Plaza las Américas. La propietaria del edificio, N & H, S.E. / Tienda Sedeco ("N & H" o "recurrida"), pretendía establecer allí una tienda de muebles y enseres. Apéndice de la Petición de *Certiorari* ("Apéndice"), págs. 90-92.

Plaza las Américas, Inc. y Rose Land, S.E. ("Plaza-Rose Land" o "peticionarias") no fueron partes en el referido procedimiento administrativo ni fueron notificadas de la referida Resolución. Aún así, obtuvieron copia de ella e instaron el 13 de julio de 2004 una apelación ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones ("J.A.C.L." o "Junta"). Alegaron ser una parte directamente interesada y afectada por la Resolución, pues el proyecto afectaba adversamente sus propiedades cercanas, e impugnaron la determinación de A.R.P.E. con varios planteamientos. Solicitaron, entre otras cosas, que la Junta ordenara a dicha agencia a paralizar todo procedimiento ante sí relacionado con la Resolución y a notificar los nombres y direcciones de quiénes fueron partes en el procedimiento administrativo, pues dicha información no surgía de la Resolución de

A.R.P.E.  Apéndice, págs. 54-63 y 98-101.

Las susodichas gestiones no frenaron los procedimientos ante A.R.P.E.  Ésta emitió el 4 de agosto de 2004 un permiso para demoler ciertas estructuras en el predio objeto de la controversia.  El día siguiente, notificó la aprobación de un permiso de construcción certificado, el cual expidió el 26 de agosto de 2004. Apéndice, págs. 102-104.

Así las cosas, Plaza-Rose Land presentaron ante la J.A.C.L. una "Moción en Auxilio de Jurisdicción".  En ella alegaron que la recurrida había comenzado la construcción y que esto implicaba una actuación sin el debido permiso de A.R.P.E. o con un permiso ilegal.  Anunciaron que instarían un procedimiento especial en el Tribunal de Primera Instancia al amparo del Artículo 28 de la Ley Orgánica de A.R.P.E., Ley Núm. 76 de 24 de junio de 1975 ("Ley de A.R.P.E." o "Ley 76"), 23 L.P.R.A. § 72. Apéndice, págs. 64-66.

Las peticionarias, Plaza-Rose Land, instaron la referida acción el 1ro de febrero de 2005.  Adujeron, *inter alia*, que la recurrida había iniciado los trabajos de remodelación, cuya ilegalidad le había sido advertida, y que tal conducta violaba los Artículos 16 y 17 de la Ley de A.R.P.E., 23 L.P.R.A. §§ 71o y 71p, los Reglamentos de Planificación, y el Reglamento de Ordenación Territorial de San Juan.  El foro de instancia emitió el día siguiente una orden paralizando provisionalmente el proyecto de la

recurrida y señalando una vista para el 28 de febrero de 2005. Mientras tanto, y habiéndose emplazado a N & H con copia de la referida orden, A.R.P.E. expidió el 14 de febrero de 2005 un tercer permiso de construcción con respecto al predio objeto de esta controversia. Apéndice, págs. 46, 67-69, 70-72, y 105.

Celebradas sendas vistas, el Tribunal de Primera Instancia notificó el 29 de junio de 2005 una sentencia favorable a Plaza-Rose Land. Ordenó que éstas agotaran los remedios administrativos para hacer valer los derechos reclamados y paralizó, mientras tanto, el proyecto de N & H. Apéndice, págs. 73-75 y 37-44.

Inconforme, N & H instó un recurso de apelación el cual acompañó con una moción en auxilio de jurisdicción ante el Tribunal de Apelaciones el 8 de julio de 2005. Ese mismo día, mas sin contar con la comparecencia de Plaza-Rose Land, el foro apelativo ordenó "la paralización de la ejecución de la Sentencia emitida por el Tribunal de Primera Instancia, en cuanto dispone la paralización de la construcción del proyecto en controversia." Apéndice, págs. 5-34 y 3-4.

A su vez inconformes, Plaza-Rose Land acudieron ante nosotros oportunamente mediante Petición de *Certiorari* y Moción en Auxilio de Jurisdicción. Alegaron que erró el Tribunal de Apelaciones al dejar sin efecto la ejecución de la sentencia dictada en el foro de instancia, toda vez que "la misma disponía la paralización del proyecto en

controversia, sin tomar en cuenta que los permisos de construcción se autorizaron en violación al Artículo 31 de la Ley Orgánica de la A.R.P.E., lo que surgía claramente de los autos del caso."[1] Notificamos a la parte recurrida una orden de mostrar causa por la cual no debieramos "revocar la Resolución del Tribunal de Apelaciones ordenar así la paralización de la construcción del proyecto en controversia". La recurrida compareció en el plazo de 20 días concedido, mediante una Oposición a Moción en Auxilio de Jurisdicción. Procedemos, entonces, a resolver.

## II

Nos corresponde determinar si el Tribunal de Apelaciones procedió correctamente al suspender los efectos de una orden de paralización emitida al amparo del procedimiento especial establecido en el Artículo 28 de la Ley Orgánica de A.R.P.E., Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. § 72 ("Artículo 28"). Comenzamos, pues, con un análisis de las consecuencias del recurso de apelación presentado ante el Tribunal de Apelaciones, sobre las órdenes de paralización emitidas al amparo del referido procedimiento especial.

---

[1] El único señalamiento de error de la Petición de *Certiorari* reza: "Erró el TA al emitir una Resolución ordenando la paralización de la ejecución de la sentencia emitida por el TPI, por cuanto la misma disponía la paralización del proyecto en controversia, sin tomar en cuenta que los permisos de construcción se autorizaron en violación al Artículo 31 de la Ley Orgánica de la A.R.Pe., lo que surgía claramente de los autos del caso."

**A.**

Generalmente, la presentación de un escrito de apelación ante el Tribunal de Apelaciones en un caso civil, impide que continúen los procedimientos ulteriores en el Tribunal de Primera Instancia, a menos que el foro apelativo ordene lo contrario a solicitud de parte o *motu proprio*. Regla 53.9 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 18 del Reglamento del Tribunal de Apelaciones de 20 de julio de 2004, 4 L.P.R.A., Ap. XXII-B. Sin embargo, los efectos de una decisión así apelada no quedan en suspenso cuando ésta incluye como remedio una orden de *injunction*, de *mandamus*, o de hacer o desistir, salvo que el foro apelativo ordene lo contrario a solicitud de parte o iniciativa propia. Reglas 53.9(d)(1) y 18(B)(1), *id.*; *Rodríguez Mora v. García Llorens*, 147 D.P.R. 305, 311 (1998).[2]

---

[2] La citada Regla 53.9(1) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone en lo pertinente:

> No se suspenderán los efectos de una decisión apelada o recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación, que incluya cualquiera de los remedios siguientes:
> (1) Una orden de injunction, de mandamus o de hacer o desistir.

La citada Regla 18(B)(1) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, dispone en lo pertinente:

> No se suspenderán los efectos de una decisión apelada, salvo una orden en contrario expedida por el Tribunal de Apelaciones, por iniciativa propia o a solicitud de parte, cuando ésta incluya cualesquiera de los remedios siguientes:

Ahora bien, el efecto post-apelativo de los *injunctions* ha recibido un trato especial en la Regla 57.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[3] Los Comentarios a dicha regla indican que su texto corresponde a la Regla federal 62, incisos (c) y (g), y a lo resuelto en *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978).[4] Indicamos allí, entre otras cosas, que la suspensión de los efectos de un *injunction* apelado es una medida discrecional del foro de instancia apelado así como

---

(1) Una orden de injunction, de mandamus o de hacer o desistir.

(2)

[3] La Regla 57.6 de las Reglas de Procedimiento Civil dispone:

"(a) Cuando se apele o recurra de una sentencia o resolución, concediendo, dejando sin efecto o denegando un *injunction*, el tribunal apelado podrá discrecionalmente suspender, modificar, restituir o conceder un *injunction* mientras se dilucida el recurso interpuesto bajo aquellos términos relativos a fianza y demás que estime adecuados para proteger los derechos de la parte contraria.

(b) Lo dispuesto en esta regla no restringe la facultad del tribunal de apelación o de uno de sus jueces para paralizar los procedimientos mientras se dilucida el recurso interpuesto o para suspender, modificar, restituir o conceder un *injunction* mientras esté pendiente la apelación o *certiorari*, o para dictar cualquier orden adecuada para preservar el *status quo* o la efectividad de la sentencia que habrá de emitirse en su día.

[4] Véase, además: *Rodríguez Mora v. García Llorens*, 147 D.P.R. 305 (1998); Cuevas Segarra, *Tratado de Derecho Procesal Civil*, T. II, San Juan, Publicaciones JTS, 2000, págs. 902-905 y 1067-1070; Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Universidad Interamericana de Puerto Rico, 1996, págs. 77-80.

del apelativo.[5]    En ambos casos, el peticionario debe demostrar: (1) que ha presentado un caso fuerte con probabilidad de prevalecer en los méritos de la apelación; (2) que sufrirá un daño irreparable si no se paraliza el *injunction*; (3) que ningún daño sustancial se causará a las demás partes interesadas; y (4) que la suspensión de la sentencia no perjudicará al interés público.  *Supra*, a las págs. 154-155.  Luego expresamos:

> En observancia de esta regla y en su función básica de proteger el interés de todas las partes, y considerando que la suspensión (*stay*) de la sentencia no se da por razón de derecho y si en ponderado ejercicio de discreción, el tribunal debe sopesar el beneficio que la suspensión representa para el perdidoso contra el daño que le irroga a la parte que ha obtenido el *injunction*.

*Id.*[6]

---

[5] En *Peña*, supra, reconocimos que el foro de instancia típicamente está en una mejor posición que el apelativo para dirimir la suspensión o no del interdicto apelado. *Supra*, a la pág. 154.  Véase también *Rodríguez Mora v. García Llorens*, supra, a la pág. 312.

[6] En el párrafo citado añadimos que si el tribunal "decide detener la ejecución mientras pende la apelación o revisión deberá requerir fianza *supersedeas* e imponer aquellas condiciones y salvaguardas que sin oprimir a una parte tampoco diluyan en laxitud el derecho de su adversario."  Véase, también, *Pueblo Int'l v. Srio. de Justicia*, 117 D.P.R. 754, 765-766 (1986) (Voto Particular del Juez Presidente señor Pons Nuñez).  Pero la Regla 57.6, *supra*, redactada después de nuestra decisión en el caso de *Peña*, sugiere que la imposición de fianza y otras condiciones descansa en la discreción del tribunal.  Tal es la norma bajo los incisos (c) y (g) de la Regla 62 de Procedimiento Civil federal.  Véase 11 *Wright, Millar & Kane, Federal Practice & Procedure, Civil 2d* §§ 2904 y 2908 (1995).  La Resolución del foro *a quo* en el caso de marras no impuso tales medidas.  Sin embargo, habida

Al acoger estos principios, destacamos que el remedio extraordinario de *injunction* "se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico." Añadimos que la eficacia del interdicto "descansa en su naturaleza sumaria y en su pronta ejecución." *Supra*, a la pág. 154; reiterado en *Noriega Rodríguez v. Hernández Colón*, 130 D.P.R. 919, 932 (1992) y *Municipio de Loíza v. Sucesiones*, res. 11 de junio de 2001, 154 D.P.R. ___, 2001 T.S.P.R. 84. Esta caracterización del *injunction* la hicimos aún tratándose, como se trataba en *Peña*, *supra*, de un *injunction* permanente.

Conviene observar que las normas establecidas en *Peña*, *supra*, con respecto a los efectos post-apelativos del *injunction*, reflejan las normas que aún rigen la concesión del mismo. Al determinar si procede otorgar un interdicto permanente, el tribunal debe considerar los siguientes criterios: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado, y (4) el balance de equidades. *Pérez Vda. de Muñiz v. Criado Amunategui*, 151 D.P.R. 355, 383 nota

_____

cuenta del resultado al que llegamos en la sección IV de la presente Opinión, no es ésta la ocasión para examinar el ejercicio de discreción judicial en este ámbito.

11 (2000).[7] No son estos criterios una serie de requisitos absolutos, sino directrices que encausan la discreción del tribunal al determinar si la evidencia justifica el interdicto. Véase, por ejemplo: *Delgado v. Cruz*, 27 D.P.R. 877, 880 (1919) ("sabido es que la concesión de un injunction no es ex debito justitiae, sino que descansa en la sana discreción del tribunal."); Rivé Rivera, *supra*, a la pág. 23. De modo que existe cierta simetría entre los principios que regulan la concesión del *injunction* y los que regulan sus efectos post-apelativos.

**B.**

El Artículo 28 de la Ley de A.R.P.E.[8] contiene dos

---

[7] Los criterios correspondientes al *injunction* preliminar son los siguientes: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el injunction; y, sobre todo, (5) el posible impacto sobre el interés público del remedio que se solicita. *Municipio de Loíza v. Sucesiones*, supra; véase además, *e.g.*: *Pérez Vda. De Muñiz v. Criado Amunategui*, supra, a la pág. 372; *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776 (1994); *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200 (1975).

[8] El Artículo 28, de la Ley Orgánica de A.R.P.E., 23 L.P.R.A. sec. 72, dispone en lo pertinente:
     El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de

interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este Capítulo y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (nuisance) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:

(a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, eregido, exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, en violación de este Capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho.

(b) En la orden provisional se fijará la fecha de la vista que deberá celebrarse dentro de los diez (10) días siguientes a la radicación de la petición y se advertirá al querellado que en dicha vista podrá él comparecer, personalmente o por abogado, a confrontarse con las imputaciones que se le hacen, pudiendo dictarse la orden permanente si dejare él de comparecer.

(c) Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra.

. . . .

normativas distintas. En primer lugar, se faculta al Administrador de A.R.P.E., al Secretario de Justicia y a los vecinos, propietarios u ocupantes que hayan sido o podrían ser perjudicados, a instar recursos de interdicto, *mandamus*, nulidad y cualquier otra acción adecuada o

_____

(f) La resolución será emitida por el tribunal dentro de los diez (10) días siguientes a la celebración de la vista y podrá ordenar la paralización permanente de los actos alegados en la petición o dejar definitivamente sin efecto la orden provisional. Toda resolución será escrita y contendrá una exposición de las alegaciones principales de la petición y de la prueba producida por ambas partes, una referencia al mapa, plano o ley alegadamente infringido, o una transcripción de la disposición reglamentaria aplicable y una exposición de lo que hubiese demostrado la inspección ocular.

(g) Las resoluciones y órdenes serán apelables para el tribunal correspondiente de superior jerarquía. En tales apelaciones, y en lo aquí no provisto, regirán los términos y procedimientos que rigen las apelaciones en las acciones ordinarias, pero el récord lo constituirá el expediente original, que deberá ser elevado al tribunal de apelación. En caso de que la apelación se funde en apreciación de prueba y así se haga constar en el escrito de apelación, podrá elevarse la transcripción de la evidencia. En todos los demás casos, se considerarán como finales, a los efectos de la apelación, las adjudicaciones de hecho contenidas en la resolución.

. . .

(j) Toda persona que viole los términos de una orden provisional o permanente recaída bajo este procedimiento especial incurrirá en desacato y será castigada por el tribunal que expidió la orden con multa no menor de cien dólares ($100) ni mayor de quinientos dólares ($500) o reclusión por un término no menor de diez (10) días ni mayor de seis (6) meses.

remedio disponible en ley para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio o uso que fuera construido o mantenido en violación a la Ley de A.R.P.E. *A.R.P.E. v. Rodríguez*, supra, a la pág. 808.[9]

La segunda parte del Artículo 28 establece y reglamenta detalladamente el procedimiento especial invocado en el caso de marras. Aquí se trata de un mecanismo estatutario, independiente, especial, sumario, y limitado. *Luan Investment Corp. v. Román*, 125 D.P.R. 533, 544 (1990); *A.R.P.E. v. Rodríguez*, 127 D.P.R. 793 (1991). Su propósito es viabilizar, mediante la paralización de usos u obras, la efectividad de las leyes y reglamentos de planificación cuyo cumplimiento A.R.P.E. viene obligada a fiscalizar. *A.R.P.E. v. Rivera Morales*, res. 8 de mayo de 2003, 159 D.P.R. ___, 2003 T.S.P.R. 75; cf. *A.R.P.E. v. Rodríguez*, supra, a las págs. 803 y 809. Veamos algunas de las características de este procedimiento.

El procedimiento especial puede invocarse cuando una parte legitimada alega, en petición jurada, (1) que determinada persona está realizando un uso u obra, (2) que dicha conducta viola una ley o reglamento de planificación, y (3) que A.R.P.E. tiene la obligación de velar por el cumplimiento de dicha disposición. *A.R.P.E. v. Rivera Morales*, supra. Las partes legitimadas son el

---

[9] Nuestras expresiones en el caso citado tuvieron el efecto de combinar los dos primeros párrafos del Artículo 28 en una sola norma, a la cual hemos dado expresión.

Administrador de A.R.P.E., el Secretario de Justicia, y "los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra." Invocado el procedimiento especial, el tribunal paralizará provisionalmente la obra o uso, y cumplidos los demás requisitos enumerados en el estatuto, determinará si ha ocurrido la violación alegada. En tal caso se ordenará la paralización permanente del uso u obra, sujeta a las formas y condiciones que especifica el Artículo 28.

Téngase presente que el procedimiento especial no desplaza la función administrativa. Se trata de un mecanismo provisional, según expresamos en *A.R.P.E. v. Rodríguez*:

> Con relación al carácter provisional del Art. 28 de la Ley Orgánica de A.R.P.E., cabe también señalar que en nuestro sistema de derecho existen otras leyes cuya naturaleza es de carácter provisional únicamente y donde se requiere de una acción ulterior e independiente para adjudicar finalmente la controversia, sin que por ello se violente la doctrina de cosa juzgada. Véase, de forma ilustrativa, la Ley Núm. 140 de 23 de julio de 1974, conocida como Ley Sobre Controversias y Estados Provisionales de Derecho. Esta ley sirve de complemento y paso anterior al uso de los remedios que se conceden bajo el Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico, enmendado por la Ley Núm. 22 de 29 de abril de 1974, conocida como Ley sobre Perturbación o Estorbo.

*Supra*, a la pág. 808 nota 10 (citas omitidas). Al requerirse "una acción ulterior e independiente para

adjudicar finalmente la controversia", el procedimiento especial adviene incapaz de soslayar la función administrativa.

La disponibilidad del procedimiento sumario establecido en el Artículo 28 no está sujeta a las normas de jurisdicción primaria ni agotamiento de remedios administrativos. En *Municipio de Caguas v. AT&T Wireless PCS*, res. 18 de junio de 2001, 154 D.P.R. ___, 2001 T.S.P.R. 93, consideramos brevemente la relación entre dichas doctrinas y el Artículo 28. Allí los vecinos y el municipio demandantes alegaron que la construcción de una torre por parte de Telecorp Communications, Inc. (TCI), entidad subsidiaria de AT&T, había provocado daños a determinadas residencias, daños que ponían en peligro inminente la vida de los vecinos. Añadieron que TCI dejó de notificarles su solicitud de permiso de construcción ante A.R.P.E., y que ésta concedió el permiso ilícitamente y sin notificarles dicha determinación. Solicitaron un *injunction* preliminar y permanente paralizando la construcción y ordenando el retorno de cierto terreno a su estado anterior, más la indemnización de aquellos daños y perjuicios que les había causado la construcción.

Los demandados presentaron una moción de desestimación debido a que la acción era tardía y académica, no sólo porque la torre se había construido, sino también porque los demandantes no habían agotado los remedios administrativos. Aunque el foro de instancia

concedió el *injunction* preliminar, el antiguo Tribunal de Circuito de Apelaciones desestimó la demanda por no haberse agotado los remedios administrativos. Revocamos al foro apelativo y señalamos que las doctrinas de agotamiento y jurisdicción primaria eran inaplicables a los hechos del caso. Luego expresamos que existían "otras razones de peso en el caso de autos por las cuales no era menester acudir incialmente ante el foro administrativo." Entre ellas figuraban la posibilidad de un daño irreparable y el hecho de que "la propia ley habilitadora de ARPE en su Artículo 28 establece el derecho de toda persona a acudir directamente al foro judicial, en preterición del cauce administrativo, en cuanto a reclamaciones dirigidas a evitar estorbos a la propiedad." (Cita omitida). Dicho Artículo, expresamos, "revela la intención legislativa de favorecer el foro judicial ante reclamos de ciudadanos para evitar estorbos en su propiedad o vecindad."

Este carácter provisional e independiente del procedimiento especial exige una aclaración con respecto a las órdenes de paralización. Según hemos indicado, tan pronto una parte legitimada invoca adecuadamente el referido procedimiento, debe expedirse una orden de paralización provisional, "hasta tanto se ventila judicialmente su derecho." Artículo 28, *supra*, inciso (a). Si el tribunal determina que se cumplieron los requisitos procesales, y que ocurrió la infracción

alegada, expedirá una orden de paralización permanente. Esta distinción entre órdenes "provisionales" y "permanentes" cumple una útil función terminológica dentro del procedimiento especial. Así, por ejemplo, sólo las órdenes "permanentes" disponen con finalidad de la acción instada, reflejan las determinaciones de hechos y conclusiones de derecho finales del tribunal, y son "apelables para el tribunal correspondiente de superior jerarquía". Artículo 28, *supra*, incisos (f) y (g).[10]

No obstante, las órdenes "provisionales" y "permanentes" comparten tres características importantes. Primero, ninguna de ellas puede dejarse sin efecto mediante otro procedimiento especial o mecanismo análogo. Segundo, ambas órdenes obligan a las partes mientras se tramita el correspondiente procedimiento administrativo o judicial ordinario, salvo que un tribunal ordene lo contrario tras un análisis similar al que hoy establecemos para el trámite apelativo, *infra* § II.C. Tercero, las partes quedan así obligadas sólo hasta que una decisión final, producto del referido procedimiento ordinario,

---

[10] Aunque el referido inciso dispone que "las resoluciones y órdenes" serán apelables, una interpretación integradora del estatuto revela que las órdenes de paralización provisional no son apelables. Añadimos que tampoco son revisables mediante el recurso de *certiorari*, toda vez que ello desvirtuaría el carácter sumario del procedimiento especial.

altere el estado de derecho provisional.[11] De modo que las
órdenes emitidas al amparo del procedimiento especial,
llámense "provisionales" o "permanentes", constituyen un
remedio con cierta afinidad a los estados provisionales de
derecho, los mecanismos de aseguramiento de sentencia y
los *injunctions* preliminares, sin gozar de la finalidad
que caracteriza los *injunctions* permanentes.

Cabe subrayar, además, que las órdenes de
paralización emitidas al amparo del procedimiento especial
son un remedio estatutario e independiente del *injunction*
tradicional. Este último es un remedio discrecional cuya
concesión responde a los principios analíticos resumidos
anteriormente. Se trata, además, de un recurso al que
pueden oponerse las defensas tradicionales de la equidad
anglosajona. Véase, *e.g.*: *Asociación de Vecinos de Villa
Caparra v. Iglesia Católica*, 117 D.P.R. 346, 354 (1986);
*Systema de P.R. v. Interface Int'l*, 123 D.P.R. 379, 387
(1989); Rivé Rivera, *supra*, a las págs. 76-77. Las
órdenes de paralización solicitadas al amparo del
procedimiento especial, en cambio, no surjen de la
susodicha equidad y han de evaluarse con miras a la letra
del Artículo 28 y su jurisprudencia interpretativa.

---

[11] Adoptamos las dos primeras normas en virtud de una
analogía con los Artículos 3, 5 y 6 de la Ley Sobre
Controversias y Estados Provisionales de Derecho, Ley Núm.
140 de 23 de julio de 1974. Véase: 32 L.P.R.A. §§ 2873
(d), 2875, y 2876; *Marín v. Serrano Agosto*, 116 D.P.R. 603
(1985). La tercera norma se deriva del carácter
provisional del procedimiento especial.

*A.R.P.E. v. Rivera Morales*, supra; *A.R.P.E. v. Rodríguez*, *supra*.[12]

<strong>C.</strong>

Veamos ahora los efectos de una apelación al Tribunal de Apelaciones sobre las órdenes paralizadoras emitidas al amparo del procedimiento especial que establece el Artículo 28 de la Ley de A.R.P.E. Sin duda han de aplicarse las Reglas 53.9(d)(1) y 18(B)(1), discutidas anteriormente, en cuanto disponen que la presentación de una apelación no suspende los efectos de las órdenes de hacer o desistir. Por supuesto, las mismas reglas facultan al tribunal para dejar sin efecto tales órdenes,

---

[12] En *Rivera Morales*, supra, expresamos:

> Cuando se trate de una petición de injunction autorizado expresamente por dicho estatuto, es importante aclarar que éste no surge de la jurisdicción de equidad de la corte, en virtud del cual el tribunal ordena a una persona bajo apercibimiento de desacato que realice o deje de realizar un acto que infrinja o perjudique el derecho de otro. En esto se diferencia del injunction clásico u ordinario. Tampoco se requiere alegación ni prueba de daños irreparables, y sólo la determinación de que el demandado ha violado las disposiciones de la ley. *Pueblo v. A. Roig, Sucrs.*, 63 D.P.R. 18, 38-39 (1944); Véase además, D. Rivé Rivera, Recursos Extraordinarios, 2da Ed., Programa de Educación Jurídica Continua de la facultad de Derecho de la Universidad Interamericana de Puerto Rico, págs. 19-20.
>
> En fin, el Artículo 28 provee el mecanismo de injunction para hacer cumplir las leyes y reglamentos de planificación. De este modo, al interponerse una petición de injunction al amparo del Artículo 28 de la Ley Núm. 76, supra, éste deberá evaluarse según los criterios establecidos en dicho estatuto.

ya sea a solicitud de parte o iniciativa propia. Surge entonces la pregunta de cuáles deben ser los criterios que guían la discreción del tribunal en este ámbito.

Resolvemos que la facultad del Tribunal de Apelaciones para suspender los efectos del remedio paralizador del procedimiento especial debe ejercitarse al amparo de normas análogas a las que establecimos en *Peña v. Federación de Esgrima de P.R.*, *supra*, y se codificaron en la Regla 57.6 de Procedimiento Civil, *supra*. Podría sostenerse que el caso aludido no aplica *ex propio vigore* al procedimiento especial del Artículo 28, pues uno atiende los efectos post-apelativos del *injunction* tradicional y otro establece un remedio estatutario e independiente. Hemos visto, en particular, que los requisitos del interdicto tradicional son más rigurosos que los requisitos de las órdenes protectoras que autoriza el Artículo 28 en su procedimiento especial; y que las normas del referido caso, sobre los efectos post-apelativos de un *injunction*, son un reflejo de tal rigurosidad.

No empece estas diferencias, los remedios bajo consideración responden a una misma finalidad. Ya indicamos que el *injunction* se caracteriza, entre otras cosas, por su acción dirigida a "restablecer el régimen de ley conculcado por conducta . . . ilegal . . . del transgresor del orden jurídico." *Peña*, *supra*. Idéntico propósito anima el procedimiento especial del Artículo 28.

En ambos casos, además, la eficacia del remedio "descansa en su naturaleza sumaria y en su pronta ejecución." *Id*. El historial legislativo del procedimiento especial refleja estas preocupaciones al destacar la necesidad de un mecanismo rápido y económico para lograr la paralización inmediata de obras clandestinas, toda vez que el esquema anterior, basado en la imposición de multas diarias, había resultado ineficaz. *A.R.P.E. v. Rodríguez*, *supra*, a la pág. 807. De modo que se trata de un remedio cuyo propósito es vindicar el régimen jurídico antes de que las circunstancias hagan de tal cumplimiento una labor demasiado costosa o imposible. Las normas establecidas en *Peña*, están diseñadas precisamente, según vimos, para desempeñar esta función en la etapa apelativa.

En fin, la presentación de una apelación ante el Tribunal de Apelaciones no suspende los efectos de una orden paralizadora emitida al amparo del procedimiento especial que establece el Artículo 28 de la Ley de A.R.P.E., a no ser que disponga lo contrario el Tribunal de Primera Instancia o el Tribunal de Apelaciones, a solicitud de parte o *motu proprio*, y de conformidad con los criterios de *Peña v. Federación de Esgrima de P.R.* y la Regla 57.6 de Procedimiento Civil, *supra*.

**III**

Es consecuencia lógica de lo antes expresado que el Tribunal de Apelaciones debe mantener en vigor una orden de paralización emitida al amparo del procedimiento

especial del Artículo 28 cuando el peticionario insta una apelación sin probabilidad de prevalecer en los méritos. En el caso de autos, Plaza-Rose Land indican en su único señalamiento de error que incidió el foro *a quo* al paralizar la ejecución de la sentencia dictada por el tribunal de instancia, toda vez que "la misma disponía la paralización del proyecto en controversia, sin tomar en cuenta que los permisos de construcción se autorizaron en violación al Artículo 31 de la Ley Orgánica de la A.R.Pe, lo que surgía claramente de los autos del caso." Para determinar si, en efecto, la recurrida tenía suficiente probabilidad de prevalecer en los méritos, nos incumbe destacar varios principios del ordenamiento jurídico en materia de planificación.

### A.

Recordemos, en primer lugar, que todo uso u obra en el Estado Libre Asociado debe ser lícito y autorizado. El Artículo 17 de la Ley de A.R.P.E. dispone al respecto:

> A partir de la vigencia de esta ley y de la vigencia de la reglamentación administrativa dispuesta por la Administración para la tramitación de permisos, no se construirá, reconstruirá, alterará, demolerá ni trasladará edificio alguno en Puerto Rico, ni se instalarán facilidades, ni se subdividirá, desarrollará, urbanizará terreno alguno, a menos que dicha obra sea previamente aprobada y autorizada por la Administración.

23 L.P.R.A. § 71p.[13] El Artículo 16 de la misma Ley
establece una prohibición análoga con respecto al uso de
terrenos y edificios, cuya parte relevante lee:

> A partir de la vigencia de los reglamentos que
> para desarrollo y uso de terrenos, así como para
> la construcción y uso de edificios, hayan sido
> aprobados, o que se adopten, conforme a ley, no
> podrá usarse ningún terreno o edificio, ni
> ninguna parte de éstos, a menos que el uso sea
> de conformidad con dichos reglamentos y de
> acuerdo con el permiso que se conceda por la
> Administración o por un municipio autónomo
> autorizado, según se disponga en dichos
> reglamentos, en este capítulo o en cualquier
> otra ley aplicable, o para el mismo fin para el
> cual se usaban y hasta donde se usaban cuando
> entraron en vigor dichos reglamentos.

23 L.P.R.A. § 71o.[14]

Las disposiciones citadas establecen dos requisitos
independientes, a saber, que el uso u obra sea lícito y
que se ejecute con el debido permiso. Por un lado,
expresamos en *E.L.A. v. Rivera*, 88 D.P.R. 196, 199 (1963),
que cierta edificación "se hizo en violación de un
reglamento, aún cuando fuera autorizada por un funcionario
de la propia Junta [de Planificación]. Siendo en
violación de la ley procede su corrección." Véase,
también, *Del Rey v. J.A.C.L.*, 107 D.P.R. 348 (1978). La
diligencia y buena fe de quien ejecuta un uso u obra

---

[13] Véase, además, el Reglamento para la Certificación de
Obras y Permisos, Reglamento de Planificación Número 12 de
29 de junio de 2002.

[14] Véase, además, el Reglamento de Zonificación,
Reglamento de Planificación Número 4 de 5 de noviembre de
2000.

contrario a derecho es un factor relevante a la hora de precisar el debido proceso de ley[15] y confeccionar el remedio apropiado,[16] sin alterar su ilicitud.

Por otro lado, las obras y usos deben realizarse con un permiso adecuado y válido. El requisito de obtener un permiso adecuado consta claramente en las disposiciones citadas de la Ley 76, donde se establece que todo uso u obra precisa la obtención del permiso correspondiente. El requisito de obtener un permiso válido emana de los principios básicos del derecho administrativo. En particular, A.R.P.E. no está exenta del principio de que todo acto administrativo ha de ser cónsono con las facultades delegadas, y los procedimientos establecidos, mediante ley o reglamento. Véase, a modo de ejemplo: *Misión Industrial v. Junta de Planificación,* 146 D.P.R. 64 (1998); *Caribe Communications v. P.R. Telephone*, res. 18 de junio de 2002, 157 D.P.R. ___, 2002 T.S.P.R. 83;

---

[15] *Fuertes Guillermety v. A.R.P.E.*, 130 D.P.R. 971 (1992). En *Fuertes Guillermety*, supra, indicamos tácitamente que un permiso adquirido de buena fe podría constituir un interés propietario. Véase la discusión de este caso, *infra*.

[16] Véase, *e.g.*, *Municipio de San Juan v. Bosque Real*, res. 4 de marzo de 2003, 158 D.P.R. ___, 2003 T.S.P.R. 31; *Del Rey v. J.A.C.L.*, supra. Por ejemplo, en *Del Rey v. J.A.C.L.*, supra, resolvimos que "vistas las conclusiones de hecho de la propia Sala sentenciadora ..., y tratándose de un procedimiento fundamentalmente equitativo el que invoca la demandante, la sentencia debe ser modificada en el sentido de que el costo de la reducción en exceso de la altura de 1 metro y hasta 6 pies, no debe ser con cargo a la demandada."

*Municipio de San Juan v. Bosque Real*, res. 4 de marzo de 2003, 158 D.P.R. ___, 2003 T.S.P.R. 31. Por ende, un permiso de uso o construcción cuya emisión excedió las facultades de A.R.P.E., o incumplió las normas procesales aplicables, es inválido e incapaz de conferir la autorización que exigen los Artículos 16 y 17 de la Ley 76, *supra*.

**B.**

La plena validez de los permisos que concede A.R.P.E. está sujeta a ciertas condiciones que debemos reiterar. El Artículo 31 de la Ley 76, 23 L.P.R.A. § 72c, establece un plazo de 30 días para instar una apelación ante la J.A.C.L. Luego dispone:

> Una vez radicado un escrito de apelación ante la Junta de Apelaciones y notificado el mismo por el apelante, el organismo o funcionario de cuya actuación se apela, suspenderá todos los procedimientos ante sí, relativos a la actuación, determinación o resolución de la cual se apela.

En *Fuertes Guillermety v. A.R.P.E.*, 130 D.P.R. 971 (1992), caracterizamos de *ultra vires* la expedición de un permiso antes de transcurrir los 30 días disponibles para apelar la resolución de A.R.P.E. que autorizaba el mismo. Expresamos al respecto:

> Daubón argumenta que el Permiso de Uso que se le expidió el 4 de enero de 1990 . . . no podía revocársele sin una vista previa debido a que constituía un derecho de propiedad . . . Aquí, los Permisos de Construcción y de Uso fueron expedidos *ultra vires desde un principio*, en violación al Art. 31 [de la Ley 76]. La ley dispone que una vez iniciada una apelación ante la Junta, los procedimientos ante A.R.Pe. quedan

> paralizados.      A.R.Pe.   emitió   erróneamente   el
> *Permiso de Construcción* el 23 de septiembre de
> 1988,  antes  de  que  transcurrieran  los  treinta
> (30)  días  para  apelar  su  resolución.  Fuertes
> apeló  en  tiempo.  La  decisión  de  A.R.Pe.  nunca
> advino final y firme.
>
> Fuertes diligentemente impugnó el *Permiso de*
> *Construcción* el 9 de diciembre de 1988. A.R.Pe.
> incluyó,  como  controversia  a  dilucidarse  ante  la
> Junta,  su  validez.  Daubón  tuvo  conocimiento  de  la
> apelación  y  sus  fundamentos.  No  fue  sorprendido
> en  su  buena  fe.  No  puede  ahora  alegar  haber
> adquirido en el permiso un derecho de propiedad.

*Supra*, a las págs. 981-982 (énfasis en original y cita omitida).[17]

Por supuesto, las normas que acabamos de repasar con respecto a la revisión de la J.A.C.L. aplican sólo cuando ésta posee jurisdicción.   Dicha facultad jurisdiccional precisa límites, algunos de los cuales hemos identificado en otras ocasiones. *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692; *Flamboyán Gardens v. Junta de Planificación*, 103 D.P.R. 884 (1975); *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991); *Carabarín v. A.R.P.E.*, 132 D.P.R. 983 (1993); *Maymi Martínez v. Gobierno Municipal Autónomo de Ponce*, 151 D.P.R. 689 (2000). Aún así, es preciso

---

[17] Las  peticionarias,  Plaza-Rose  Land,  sostienen  que  lo resuelto  en  *Fuertes  Guillermety*,  supra,  amplía  la  letra del  Artículo  31.   Éste  dispone  que  A.R.P.E.  suspenderá  los procedimientos  ante  sí  al  radicarse  y  notificarse  una apelación  ante  la  J.A.C.L.   Las  peticionarias  añaden  que, según  *Fuertes*,  A.R.P.E.  no  debe  expedir  un  permiso  de construcción  antes  de  transcurrir  el  plazo  de  30  días  para apelar  a  la  Junta  la  Resolución  correspondiente.  Petición de  Certiorari,  a  las  págs.  2  y  10.   La  controversia  de autos  no  exige  una  expresión  nuestra  sobre  este particular.

recordar la norma general de que todo foro judicial y cuasi-judicial está llamado a dirimir, en primera instancia, cualquier planteamiento sobre su propia jurisdicción. *Colón Ventura v. Méndez*, 130 D.P.R. 433 (1992). Resulta evidente, entonces, que el efecto del Artículo 31 bajo consideración no puede evitarse con un mero planteamiento de que la J.A.C.L. carece o podría carecer de jurisdicción para atender la Apelación oportunamente instada.

## IV

En el caso de epígrafe, la recurrida no ha demostrado en su comparencia ante nosotros, y no demostró en su escrito ante el Tribunal de Apelaciones, que tuviese un caso cuya probabilidad de prevalecer en los méritos justifique la suspensión de la orden de paralización emitida por el Tribunal de Primera Instancia. Veamos.

Las peticionarias invocaron el Artículo 28 ante el Tribunal de Primera Instancia para detener una obra que se llevaba a cabo al amparo de un permiso emitido por A.R.P.E. con posterioridad a la apelación que instaron las propias peticionarias ante la J.A.C.L. Sostiene la recurrida, en síntesis, que no procede paralizar su obra por tener ellos la debida autorización y porque se ha invocado indebidamente el Artículo 28.

Arguye N & H, que tiene permisos de uso y construcción capaces de autorizar su obra, toda vez que fueron emitidos por A.R.P.E. Indica, además, que existe

una interrogante con respecto a si la J.A.C.L. tiene jurisdicción para atender la apelación de las peticionarias. Oposición a Moción en Auxilio de Jurisdicción ("Oposición"), págs. 8 y 2. Hemos visto, sin embargo, que A.R.P.E. procede *ultra vires* al emitir un permiso cuya resolución correspondiente ha sido apelada oportunamente ante la J.A.C.L., norma que surge claramente del Artículo 31 de la Ley 76 y de *Fuertes Guillermety*, supra. Así también, la facultad de todo foro cuasi-judicial para dirimir su propia jurisdicción no admite serias dudas con respecto a que el mero planteamiento de un problema jurisdiccional resulta incapaz de revestir con matices de legitimidad una actuación *ultra vires*. Por ende, los permisos de N & H carecían a todas luces de validez y su obra era contraria a derecho.

No empece la ilicitud de su obra, N & H plantea que Plaza-Rose Land han invocado indebidamente el procedimiento especial establecido en el Artículo 28, toda vez que carecen de legitimación para valerse del mismo y no han agotado los remedios administrativos. Por un lado, el procedimiento especial requiere que Plaza-Rose Land sean "colindantes [o] vecinos que pudieren ser afectados por la violación." Aún cuando el Tribunal de Primera Instancia no hizo determinaciones de hechos dirigidas a establecer que las peticionarias cumplen dicho requisito, difícilmente se puede sostener lo aseverado por la recurrida que, "en el presente caso, no existe ni una sola

alegación sobre grado de afectación alguno de los demandantes." Apéndice, págs. 38-39; Oposición, pág. 5. Las peticionarias declararon en su Petición jurada que eran propietarias de inmuebles colindantes y cercanos al inmueble de la recurrida, y que habían sido directamente afectadas por las determinaciones de A.R.P.E. En su Escrito de Apelación ante la Junta, documento que forma parte del récord en el tribunal de instancia, las peticionarias alegaron que la remodelación crearía problemas de congestión vehicular, falta de estacionamientos, acceso ineficiente al centro comercial Plaza las Américas a través de una de sus entradas, y seguridad inadecuada de quienes por allí transitan. La prueba documental sugiere que los predios de las peticionarias colindan o ubican cerca del terreno en controversia. Apéndice, págs. 45, 54, 84, y 76. Tales pruebas y alegaciones, en el contexto de un procedimiento sumario, bastan para establecer que al menos una de las peticionarias es vecina o colindante que pudiera ser afectada por el proyecto ilícito.

Por otro lado, las peticionarias no venían obligadas a agotar los remedios administrativos antes de invocar el Artículo 28. Somos conscientes de que fueron ellas quienes iniciaron dicho proceso y de que la J.A.C.L. estaba facultada para paralizar el proyecto. Sin embargo, nuestras expresiones previas con respecto al carácter sumario e independiente del Artículo 28 indicaban que no

era necesario agotar los remedios administrativos en las circunstancias de este litigio. *AT&T Wíreles*, supra*. De modo que las peticionarias tenían a su disposición el Artículo 28, no para sustituir el juicio administrativo, como sugiere la recurrida en su Oposición, sino para hacer efectivas las leyes y reglamentos de planificación cuya fiscalización A.R.P.E. tiene a su cargo.

En fin, una apreciación de los hechos en este caso, con miras al derecho vigente cuando emitió el Tribunal de Apelaciones su orden de paralización, nos convence de que la recurrida tenía pocas posibilidades de prevalecer en los méritos. Sumada a esta circunstancia la ausencia de prueba dirigida a demostrar que la paralización de la obra ocasionará daños irreparables a la recurrida, que no ocasionará daños sustanciales a las peticionarias, y que no perjudicará el interés público, forzoso es concluir que incidió el foro *a quo* al suspender los efectos de la sentencia apelada.

## V

Por los fundamentos antes expresados, se revoca la resolución del Tribunal de Apelaciones en cuanto ordenó la paralización de la ejecución de la sentencia emitida por el Tribunal de Primera Instancia que paralizó la construcción del proyecto en controversia. Habida cuenta que el único planteamiento ante el Tribunal de Apelaciones era precisamente la validez de la orden de paralización emitida, a la luz de lo resuelto, procede que continúen

los procedimientos ante la J.A.C.L. acorde con lo aquí expresado.

Se dictará sentencia de conformidad.


ANABELLE RODRIGUEZ RODRIGUEZ
                Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza Las Américas, Inc.,
Rose Land, S.E.

    Peticionarias

       v.                          CC-2005-701

N & H, S.E. / Tienda Sedeco

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 28 de diciembre de 2005

Por los fundamentos expuestos en la Opinión que antecede los cuales se incorporan íntegramente a la presente, se revoca la resolución del Tribunal de Apelaciones en cuanto ordenó la paralización de la ejecución de la sentencia emitida por el Tribunal de Primera Instancia que paralizó la construcción del proyecto en controversia. A la luz de lo resuelto, procede que continúen los procedimientos ante la Junta de Apelaciones sobre Construcciones y Lotificaciones acorde con lo aquí resuelto.

Así lo pronuncio, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Presidente señor Hernández Denton, inhibido. El Juez Asociado señor Rebollo López no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo