Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| JOSÉ MEDINA CÓRDOVA Y OTROS<br><br>**APELANTE**<br><br>v.<br><br>COMITÉ TIMÓN URB. PASEOS REALES CORP.<br><br>**APELADA** | KLAN202400284 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2023CV01946 (SALÓN 0603)<br><br>Sobre: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) Y OTROS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Los apelantes, José Medina Córdova, Edna E. Ramos Sanabria y su sociedad legal de gananciales solicitan que revoquemos la sentencia en la que el Tribunal de Primera Instancia declaró NO HA LUGAR la demanda.

El apelado, Comité Timón Urbanización Paseos Reales Corp. (en adelante, el Comité o apelado), presentó su oposición al recurso.

Los hechos que anteceden la controversia ante nos son los siguientes.

**I**

La parte apelante presentó una demanda de sentencia declaratoria, injunction preliminar y permanente contra el apelado. Sus alegaciones para solicitar un injunction son las siguientes. El Comité se niega a venderle un interruptor manual (beeper) para activar el control de acceso, porque alegadamente adeuda las cuotas

de mantenimiento. Los apelantes no pueden tener acceso a su propiedad libremente, porque el apelado pretende darle solo una llave manual y en su residencia viven dos personas. El Comité discrimina contra los apelantes, quienes tienen el mismo derecho que los demás residentes a poseer un beeper, siempre y cuando paguen el costo. Los apelantes han adquirido interruptores manuales (beepers) de terceras manos, pero el apelado los desactiva. El 20 de octubre de 2023, los apelantes presentaron una querella contra el apelado, porque les invalidó el control de acceso y les inhabilitó el código del panel de control. La acción del Comité les impide usar el código de entrada cuando tienen visita y en situaciones de emergencia. El apelante se ha quedado fuera de la urbanización en múltiples ocasiones. El cartero en ocasiones no ha podido entrar a la urbanización por problemas con los portones de entrada. El 8 de noviembre 2023, los residentes con llaves no podían salir de la urbanización porque el portón estaba dañado. Únicamente podían salir los residentes con interruptor manual. El 15 de noviembre de 2023, no se podía entrar a la urbanización ni con el interruptor manual (beeper), ni marcando el número de entrada para contactar al titular.

Los apelantes adujeron que el Comité viola el Art. 3.015, 21 LPRA sec. 7425 del Código Municipal de Puerto Rico, porque le impide el paso al área de control de acceso en igualdad de condiciones que los demás propietarios y residentes. La parte apelante reclamó el mismo derecho que los demás residentes a entrar y salir libremente, independientemente del pago de las cuotas de mantenimiento. Su reclamo está basado en los derechos constitucionales a la intimidad y al disfrute de la propiedad. Según los apelantes, el apelado viola ambos preceptos constitucionales, porque se niega a entregarle un beeper y un código de acceso. Véase, pág. 1 del apéndice.

La demanda incluyó una segunda causa de acción en la que los apelantes solicitaron una sentencia declaratoria. La parte apelante

pidió al tribunal que reconociera que el control de acceso fue establecido en virtud de la Ley de Control de Acceso y no de la escritura de condiciones restrictivas.

El Comité alegó que el injunction es un recurso extraordinario que no está disponible para ordenarle entregar inmediatamente a los apelantes un control remoto de acceso a la urbanización. Según el apelado, el apelante utiliza el remedio interdictal para obtener aquello que solo puede tener si paga la cuota de mantenimiento. Además, adujo que los apelantes tienen otro remedio adecuado en ley. Según el apelado, los apelantes tienen disponible la Regla 56 de Procedimiento Civil, 32 LPRA Ap. V, R. 56, para reclamar su alegado derecho a tener un control remoto y para las demás causas de acción, el proceso ordinario establecido en el Código Civil. Por eso pidió la desestimación de la demanda. Véase, pág. 27 del apéndice.

El foro apelado realizó la vista de interdicto preliminar y permanente. Ambas partes comparecieron representadas por sus abogados. El TPI analizó la prueba documental, adjudicó credibilidad, tomó como ciertos todos los hechos bien alegados en la demanda y los interpretó lo más favorable para la parte apelante. Luego de ese ejercicio concluyó que la parte apelante utiliza el remedio interdictal para obtener una forma más conveniente de entrar y salir de la urbanización, mediante un dispositivo electrónico. Al TPI le quedó claro que las alegaciones de la demanda no evidencian un riesgo real de daño irreparable. Según el foro apelado, el mojarse con agua de lluvia y la congestión de tránsito vehicular, no cumplen con la definición de un daño irreparable.

El TPI determinó que los apelantes adquirieron la propiedad, sujetos a las restricciones de control de acceso establecidas en el contrato de compraventa. Al tribunal le quedó claro que el apelado obró conforme al reglamento vigente de la urbanización. Según el TPI, el apelante aceptó que estaba sujeto al contrato de compraventa

donde se establecen las restricciones y se permite al apelado poner condiciones como el pago de las cuotas de mantenimiento.

El foro apelado hizo hincapié en que los apelantes no han recibido el dispositivo electrónico adicional, porque no pagan las cuotas de mantenimiento. El TPI les aclaró que el interdicto no es el remedio para su reclamo, ya que tienen disponibles remedios civiles ordinarios adecuados en ley para hacer valer sus derechos. El 29 de diciembre de 2023, el tribunal desestimó la demanda, porque los hechos alegados por los apelantes no configuran un daño irreparable y pueden reclamar sus derechos en un procedimiento ordinario.

Inconformes, los apelantes presentaron este recurso en el alegan que:

> Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda en su totalidad por falta de daño irreparable, admitiendo prueba contraria a las alegaciones que surgen de la Demanda en contravención al vehículo procesal de la desestimación.

> Erró el Honorable Tribunal de Primera Instancia al declarar sobre la petición de sentencia declaratoria que quedó establecido que el demandante compró con las restricciones que establece el contrato de compraventa vigente de la Urbanización cuando dichas expresiones las realizó el abogado y no la parte como surge de la Sentencia, en violación al debido proceso de ley.

**II**

**Servidumbres de equidad y condiciones restrictivas**

Las servidumbres en equidad conocidas como condiciones restrictivas o restricciones voluntarias limitan el derecho propietario, porque imponen cargas o gravámenes que obligan a presentes y futuros adquirientes. El urbanizador de una finca las constituye unilateralmente para restringir las facultades de todo futuro adquiriente respecto al inmueble gravado. Las restricciones, condiciones y limitaciones al uso y a las edificaciones permisibles tienen el propósito primordial de preservar la belleza, comodidad y la seguridad de los residentes. *SLG Fernández-Bernal v. RAD-MAN et al.,*

208 DPR 310, 326 (2021); *Dorado del Mar v. Weber et als.,* 203 DPR 31, 42-43 (2019).

La validez y eficacia de las servidumbres está atada al cumplimiento de los requisitos siguientes: (1) las limitaciones deberán ser razonables, (2) ser parte de un plan general de mejoras, (3) constar de forma específica en el título de la propiedad y (4) ser inscritas en el Registro de la Propiedad. Una vez inscritas son derechos reales oponibles *erga omnes*. El conocimiento de las limitaciones y condiciones impuestas en virtud de las servidumbres se imputa a todo presente y futuro adquiriente de la propiedad privada. Las condiciones restrictivas son un contrato real en que las partes acuerdan gravar su propiedad para limitar su uso. Igualmente están obligados a su cumplimiento, quienes adquieren la propiedad, a sabiendas de las restricciones inscritas en el Registro de la Propiedad. Los tribunales estamos obligados a hacer cumplir las condiciones restrictivas y los propósitos del contrato, una vez reconocida su validez y vigencia. Así se preserva la autonomía de la voluntad de las partes. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 327-328.

Las servidumbres en equidad son un contrato en el que las partes pueden convenir gravar sus propiedades para delinear su uso. La persona que adquiere una propiedad gravada con condiciones restrictivas acepta someterse a ellas. Las servidumbres en equidad tienen que respectarse, porque constituyen derechos reales. El dueño que desea hacer valer o impedir la violación de las condiciones restrictivas que lo gravan tienen a su disposición el injunction. No obstante, las servidumbres en equidad pueden modificarse o extinguirse por: (1) acuerdo de los interesados mediante rescisión total o parcial o por la constitución de nuevas restricciones que alteren las anteriores, (2) el transcurso del tiempo o por realizarse la condición si las restricciones se constituyeron a plazo o

condicionalmente, (3) por confusión si se reúne en una misma persona la propiedad de todos los predios sirvientes y dominantes, (4) por renuncia o abandono de los propietarios que se benefician de la servidumbre mediante conducta que demuestre la intención concluyente de renunciar o abandonarle, (5) expropiación forzosa del predio sirviente, si las condiciones restrictivas son incompatibles con el uso público del inmueble expropiado y (6) cuando los cambios radicales del vecindario las convierten en irrazonables y opresivas para el dueño del predio sirviente y destruyen el valor que la restricción tenía para el dueño del predio dominante. *Dorado del Mar v. Weber et als.,* supra*,* pág. 44.

Los consejos, las juntas o asociaciones de residentes son los entes facultados para imponer las cuotas destinadas a sufragar los costos de instalación, operación y mantenimiento del sistema de control de acceso y los salarios del personal contratado para operarlo. Además, tienen legitimación activa para cobrar las cuotas y reclamar el pago de la deuda judicialmente. Los propietarios que no hayan autorizado expresamente el establecimiento del sistema de control de acceso no están obligados a pagar las cuotas de mantenimiento, salvo que posteriormente se comprometan a satisfacerlas mediante un contrato escrito. *Dorado del Mar v. Weber et als.,* supra, pág. 51. El propietario que no autorice inicialmente el establecimiento del acceso controlado y quiera posteriormente comprometerse al pago, tendrá que hacerlo por escrito. No obstante, ese procedimiento no es necesario, cuando el propietario autoriza desde el principio el establecimiento del régimen de acceso controlado. *Jta. Residentes v. SLG Lora-Ayala,* 206 DPR 248, 253-254 (2021).

### *Caquias v. Asoc. Res. Mansiones Río Piedras* **134 DPR 181 (1993)**

Resumimos los hechos del caso reseñado, por ser pertinentes a la presente controversia. Son los siguientes. La urbanización no

estuvo sujeta al cierre de acceso desde sus inicios. El sistema de control de acceso se estableció en el año 1990. La Asociación entregó los controles remotos a los residentes que suscribieron el contrato de mantenimiento y pagaron la cuota mensual, junto a un depósito. Algunos residentes se negaron a suscribir el contrato de mantenimiento y a pagar la cuota mensual y el depósito. A estos residentes, la Asociación no les entregó los controles remotos ni las claves.

La Asociación demandó a los residentes que se negaron a pagar las cuotas de mantenimiento para que cumplieran con el pago. Según la Asociación, los demandados no tenían derecho a recibir los controles de acceso hasta que no pagaran.

Los residentes que se negaban a pagar las cuotas presentaron una demanda sobre sentencia declaratoria, interdicto preliminar y permanente contra la Asociación. Según los demandantes, nunca firmaron un contrato autorizando el control de acceso. Los demandantes pidieron al tribunal que ordenara a la Asociación desistir del cobro y a entregarles los controles sin requerir el pago. La Asociación contestó que los demandantes no tenían derecho a los controles, porque a diferencia de lo que alegaban, autorizaron y estuvieron de acuerdo con la implementación del sistema. Según la Asociación, el derecho a recibir los controles y las llaves era de quienes pagaban las cuotas de mantenimiento y de los que se opusieron desde sus inicios al cierre.

El TPI resolvió en la acción de los residentes contra la Asociación, que la demandada tenía que proveerles a los demandantes el mismo acceso que a los demás residentes, con todos los beneficios del sistema de control de acceso, incluyendo la entrega de los controles remotos. La Asociación acudió al Tribunal Supremo de Puerto Rico.

En la acción de la Asociación contra los residentes, los demandados presentaron una moción de sentencia sumaria parcial en la que alegaron que no existía un contrato que los obligara a pagar. Además, invocaron lo resuelto por el TPI en el otro caso. El TPI declaró no ha lugar la sentencia sumaria y señaló vista en su fondo. Los residentes acudieron al Tribunal Supremo de Puerto Rico.

El Tribunal Supremo atendió conjuntamente los recursos presentados por ambas partes y redujo la controversia relevante para nuestro caso a determinar, si los residentes opositores tienen derecho a los controles remotos y a las llaves del paseo peatonal, libre de costo, sin que se les obligue a pagar la cuota de mantenimiento ni a ser miembro de la Asociación. La decisión advierte que no existe controversia de hechos esenciales ni materiales. Según el tribunal, no existe controversia de que la Asociación se niega a entregarle a los demandantes los controles y las llaves, porque entiende que ese derecho es exclusivo de los residentes que pagaron y de los que se opusieron desde el principio al control de acceso. Al Tribunal Supremo de Puerto Rico le quedó claro que la Asociación entiende que los demandantes consintieron al control de acceso, cuando firmaron la autorización para controlar el acceso. A lo que los residentes contestaron, que esa autorización no tiene el alcance que alega la Asociación.

La controversia fue atendida conforme a la entonces vigente Ley de Control de Acceso de 1987, Ley Núm. 21 de 20 de mayo de 1987, derogada por la Ley Núm. 107-2020, Código Municipal de Puerto Rico. La derogada ley obligaba al pago de cuotas de mantenimiento a: (1) los dueños de fincas en las que la autorización del municipio al sistema de acceso controlado constaba en el Registro de la Propiedad, (2) a los residentes que autorizaron la solicitud para establecer el control de acceso, si el sistema implantado es igual en términos económicos al que autorizaron, (3) a los residentes que se obligaron

posteriormente mediante un contrato escrito y (4) a los residentes que adquirieron, luego de implantado el control de acceso. No obstante, el tribunal advirtió que la Ley de Control de Acceso, *supra,* también reconocía el derecho de los residentes a oponerse al establecimiento de ese sistema y a no pagar las cuotas para su establecimiento, operación, mantenimiento o remoción. El Tribunal Supremo de Puerto Rico concluyó que los vecinos que se opongan al sistema de control de acceso tienen exactamente los mismos derechos que los vecinos que hayan apoyado el sistema y que contribuyan económicamente a su mantenimiento. Aunque reconoció que podría parecer injusto para quienes pagan, dejó claro que ese fue el balance que hizo el legislador.

El Tribunal Supremo de Puerto Rico confirmó la sentencia sumaria a favor de los residentes que se negaron a pagar y ordenó a la Asociación a entregarles libre de costo, los controles y las llaves del paseo peatonal y a desistir de cobrarles.

El Código Municipal, *supra,* derogó la Ley de Control de Acceso, en cuya vigencia se resolvió *Caquias v. Asoc. Res. Mansiones Río Piedras,* supra*,* pero incorporó varias de sus disposiciones. El Art. 3002(c) del Código Municipal, 21 LPRA sec. 7412, establece que los propietarios que autoricen el control de acceso tienen que hacerlo por escrito. Según el Art. 3012 del mismo estatuto, 21 LPRA sec. 7420, establece que están obligados a pagar las cuotas de mantenimiento: (1) los propietarios de fincas en las que se haya inscrito la autorización o permiso bajo el procedimiento establecido en la sección 7418 de este título, (2) los propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implementado, (3) todo propietario adquiriente de una finca ubicada en una urbanización autorizada por el municipio a controlar el acceso, o que se encontrara en trámite de obtener el consentimiento de tres cuartas partes de los propietarios y que conste por escrito, (4) cuando la solicitud fue hecha por el urbanizador, desarrollador o constructor, el pago será

obligatorio para toda persona que advenga dueño del inmueble y (5) los propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero posteriormente se comprometieron al pago por escrito.

Por su parte, el Art. 3015 del Código Municipal, 21 LPRA sec. 7425, establece que los propietarios que no autorizan expresamente el establecimiento de control de acceso no están obligados a pagar las cuotas para su establecimiento, operación, mantenimiento o remoción, salvo a que se hayan comprometido en un contrato escrito. Los residentes que así se han comprometido están obligados a contribuir proporcionalmente al pago del sistema. No obstante, se garantiza el derecho de todo residente o propietario al acceso al área, sujeta al control de acceso en igualdad de condiciones.

## Injunction

El injunction es un recurso extraordinario que pretende prohibir u ordenar la ejecución de un acto, para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, cuando no hay otro remedio adecuado en ley. Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521.

Por su parte, el injunction preliminar pendente lite es el recurso que el tribunal emite antes de la celebración del juicio en su fondo. De ordinario, se emite posterior a la celebración de una vista en la que las partes tienen la oportunidad de presentar prueba en apoyo y oposición a su expedición. Su objetivo principal es mantener el estado actual de las cosas, hasta tanto se celebre el juicio en sus méritos, para evitar que el demandado no promueva una situación que convierta en académica la determinación final del tribunal. El derecho sustantivo se ventilará en un juicio plenario, como sucede en cualquier otro tipo de acción. Regla 57.3 de Procedimiento Civil. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 485-486 (2014).

El remedio extraordinario del injuntion preliminar está ligado estrechamente a la doctrina de la equidad. El injuntion preliminar va dirigido a requerir o prohibir un acto determinado, para impedir perjuicios inminentes o menoscabos irreparables a alguna persona durante la pendencia del litigio. El factor cardinal que gobierna la expedición del injuntion preliminar es la existencia de una amenaza real de sufrir algún menoscabo para el cual no existe remedio adecuado en ley. Los factores que el tribunal debe ponderar al momento de evaluar la expedición de una orden de entredicho provisional o injuntion preliminar son los siguientes: (1) la naturaleza de los daños que su denegatoria o concesión pueda ocasionarle a las partes, (2) su irreparabilidad o la existencia de un remedio adecuado en ley, (3) la probabilidad de que la parte promovente prevalezca al resolverse el litigio en su fondo, (4) la probabilidad de que la causa se torne académica de no concederse el injuntion, (5) el posible impacto sobre el interés público del remedio solicitado y (6) la diligencia y buena fe con que ha obrado la parte peticionaria. Reglas 57.2 y 57.3 de Procedimiento Civil, 32 LPRA Ap. V. *Next Step Medical v. Bromedicon et al.,* supra, págs. 486-487.

La parte que solicita un injuntion tiene que demostrar un daño irreparable, que no puede ser satisfecho adecuadamente por los remedios legales disponibles. La expedición del recurso extraordinario de injuntion requiere detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclama una reparación urgente. Un daño irreparable es aquel que no puede ser satisfecho adecuadamente, mediante los remedios legales disponibles. *VDE Corporation v. F & R Construction,* 180 DPR 21, 40 (2010); *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 320 (2008). Su expedición procederá, siempre que el remedio legal existente, no proteja adecuadamente los derechos sustantivos del peticionario, con

la prontitud, rapidez y eficacia provista por los derechos de equidad. *Yiyi Motors, Inc. v. E.L.A.,* 177 DPR 230, 282 (2009).

El injunction permanente se produce por una sentencia final. Una vez celebrado el juicio en sus méritos y previo a ordenar un injunction permanente, el tribunal deberá considerar nuevamente, si existe otro remedio adecuado en ley. Los factores que los tribunales deben considerar para determinar si procede un injunction permanente son los siguientes: (1) si el demandante ha prevalecido en un juicio en sus méritos, (2) si el demandante posee algún remedio adecuado en ley, (3) el interés público implicado y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008). Este recurso extraordinario se caracteriza por su perentoriedad, ya que está dirigido a evitar un daño inminente o restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. *Plaza Las Américas v. N & H,* 166 DPR 631, 643 (2005).

*En Asoc. Vec. Urb. Huyke v. Bco. Santander,* 157 DPR 521, 537 (2002), el Tribunal Supremo de Puerto Rico resolvió lo siguiente:

> "Los dueños de predios sujetos a servidumbres de equidad tienen disponible el recurso de injunction, para hacer efectivos sus derechos e impedir violaciones a las limitaciones impuesta. Únicamente, tienen que probar la violación a la servidumbre, para que se justifique el uso del injunction, sin necesidad de que se pruebe daños reales. *Colón v. San Patricio Corporation,* ante, pág. 259".

### Sentencia Declaratoria

La sentencia declaratoria es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita. Está disponible independientemente de que existan otros remedios. Su eficacia y vigor son los mismos de una sentencia o resolución definitiva. Se dicta en aquellos procesos en los que los hechos demuestran que existe una controversia sustancial entre partes que tienen intereses legales

adversos y tiene el propósito de disipar una incertidumbre jurídica y contribuir a la paz social. Es adecuada a la solución a planteamientos constitucionales. Las personas que presentan una sentencia declaratoria deben tener legitimación activa. Por eso tienen que demostrar la existencia o inminencia de un daño claro y real no imaginario o hipotético. *Senado de PR v. ELA,* 203 DPR 62, 70-71 (2019).

### Honorarios por Temeridad

La temeridad es contraria a los principios de eficiencia en la administración de la justicia y el buen funcionamiento de los tribunales. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 145-149 (2022).

No obstante, el Tribunal Supremo de Puerto Rico ha reconocido que no es temerario quien plantea asuntos complejos y novedosos sobre los que no existen precedentes vinculantes. Igualmente, ha expresado que tampoco existe temeridad cuando hay alguna desavenencia honesta en cuanto al derecho aplicable a los hechos del caso. Por el contrario, ha advertido que es claramente temerario quien: (1) insiste contumazmente en alegar algo, sin prueba fehaciente que lo apoye, (2) niega los hechos que le constan o son de fácil corroboración y (3) dilata los procedimientos judiciales para no responder por sus obligaciones. La imposición de honorarios de abogados por temeridad descansa en la sana discreción judicial. *SLG González-Figueroa v. SLG et al.,* supra, pág. 149.

Por otro lado, el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, dispone lo siguiente:

Regla 85 — Costas y sanciones

[...]

(B) Si el Tribunal de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado o abogadas las costas, los gastos, los

honorarios de abogado y la sanción económica que estime apropiada, la cual deberá reflejar, en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Apelaciones. El tribunal impondrá iguales medidas a la parte promovida o a su abogado cuando determine que la contestación al recurso es frívola o que ha sido presentada para dilatar los procedimientos.

(C) El Tribunal de Apelaciones impondrá costas y sanciones económicas en todo caso y en cualquier etapa a una parte, a su abogado o a su abogada por la interposición de recursos frívolos o por conducta constitutiva de demora, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia.

**III**

La controversia se reduce a determinar si el apelante tiene una causa de justifique que el tribunal dicte un injuncion y una sentencia declaratoria a su favor.

La parte apelante alega que el apelado viola su derecho constitucional propietario, porque se niega a venderle un interruptor manual (beeper) para activar el control de acceso. Los apelantes aducen que el apelado le ha ocasionado un agravio de patente intensidad, porque los ha privado del único acceso para entrar y salir de su residencia. Según los apelantes, la escritura de compraventa y el reglamento de la urbanización no le dan poder al Comité para impedirle el acceso, por no pagar las cuotas de mantenimiento. Los apelantes argumentan que el daño es inminente, porque el apelado tampoco le ha entregado unas llaves para entrar y salir de la urbanización. Aunque reconocen que existe una escritura con condiciones restrictivas, alegan que no se cumplió el procedimiento para implantar el control de acceso y que el Municipio autorizó ese sistema, luego de que adquirieron su residencia.

El Comité sostiene que presentó como evidencia la Escritura de Condiciones Restrictivas, debidamente inscrita en el Registro de la Propiedad, el Reglamento de la Urbanización Paseos Reales y la aprobación de ARPE para el cierre. El apelado alega que el propio

apelante admitió que firmó las condiciones restrictivas y que el Comité le garantizó su derecho al debido proceso de ley, antes de cancelarle el beeper y el código de acceso.

Según el apelado, el apelante aceptó que el Comité le pidió por escrito que pasara por la administración y que fueron a su casa para informarle que tenía que pagar las cuotas de mantenimiento. El apelado aduce que el daño alegado no es inminente, porque a los apelantes se les ofreció una llave para acceder y salir de la urbanización, pero se niegan a recibirla. Además, sostiene que el daño es autoinfligido, porque los apelantes se niegan a pagar las cuotas de mantenimiento y a recibir las llaves. Finalmente, reclama la imposición de honorarios por temeridad contra los apelantes.

El primer señalamiento de error no se cometió. El injunction no es el remedio adecuado en ley para que los apelantes reclamen que el Comité le entregue o venda un interruptor manual (beeper) para activar el control de acceso. El remedio de injunction no procede, porque el apelante no ha demostrado que la conducta del Comité le ha ocasionado un daño irreparable. La prueba presentada y no controvertida, nos deja claro que no existe un daño irreparable, porque no es cierto que el Comité privó a los apelantes del derecho a entrar y salir de su residencia. El apelante declaró que no tiene ningún acceso a la propiedad, pero su testimonio no tiene credibilidad. Véase, págs. 18 y 19 de la transcripción. El propio apelante explicó que se puede acceder a la urbanización mediante llaves, por un código o a través del tele-entry. Véase, pág. 15 de la transcripción. Su admisión de que el Comité ha intentado entregarle unas llaves, hace evidente que puede acceder y salir de la urbanización. Véase, pág. 13 de la transcripción. Según su testimonio, su descontento se debe a que el uso de llaves es un poco arcaico. Su representación legal añade que son dos residentes y que solo se les ofrece una llave y que no pueden salir cuando el portón se

daña a diferencia de los residentes que tienen beeper. Véase, págs. 32, 80 y 82 de la transcripción.

La presidenta del Comité confirmó que el apelante se niega en todo momento a recibir las llaves, a pesar de que se le pidió que pasara para informarle cómo iba a entrar a la urbanización y se envió un emplazador y personal de la Junta e incluso intervino la policía. Según la testigo, los apelantes no han ido a buscar las llaves, porque no existe evidencia de un recibo firmado.

El daño que alegan los apelantes es autoinfligido. El apelado no les entrega el interruptor manual, porque se niegan a pagar las cuotas de mantenimiento. El apelante admitió que no ha hecho ningún pago y que, en el año 2018, el Comité presentó una demanda en su contra, en la que reclamó que cumpliera con las cuotas de mantenimiento. El pleito culminó con una sentencia a favor del Comité. Véase, págs. 14, 36 y 40 de la transcripción. El 24 de marzo de 2023, el TPI declaró HA LUGAR la demanda por cobro de dinero que presentó el apelado contra la apelante, en el caso AG2018CV00044. Véase, pág. 38 del apéndice. Otro hecho que demuestra que los apelantes se autoinfligen el daño que alegan, es su negativa a recibir las llaves que le permitirían el acceso.

Las alegaciones de violaciones al debido proceso de ley tampoco son correctas. El propio apelante reconoció que el Comité le envió una carta en la que le informó que le iba a quitar el código de acceso, por no pagar las cuotas de mantenimiento. Véase, pág. 13 de la transcripción. Además, aceptó de que fueron personalmente a su residencia para informarle que le quitarían el código por falta de pago, pero para él eso era una forma de intimidarlo. Véase, pág. 14 de la transcripción.

La representación legal de los apelantes sostiene que el acceso de sus clientes a su propiedad no puede afectarse por la falta de pago. No obstante, olvida que el apelante se obligó a cumplir con el pago de

las cuotas en la escritura de condiciones restrictivas de la urbanización, que está debidamente inscrita en el Registro de la Propiedad. El apelante fue confrontado con la alegación quinta de su propia demanda en la que alegó expresamente que:

> 5. La Escritura 317 del 2 de septiembre de 2003, EXPOSITIVO SEGUNDO, Inciso (N) dispone de la siguiente manera:
> The Access to URBANIZACION PASEOS REALES in Aguadilla, Puerto Rico, will be controlled at it principal gate by electrically, operation gate. All futures owners in this controlled project will be obligated to maintain and share equally all maintenance cost of this gate. This gate has been provided by the developer for future access control of this project.

Véase, pág. 2 del apéndice.

El señor Medina aceptó que compró la propiedad con las restricciones de acceso establecidas en la Escritura 317 otorgada el 2 de septiembre de 2003 y leyó en voz alta la cláusula citada. Véase, pág. 38 de la transcripción. Su testimonio y la copia de la escritura nos dejan claro que el apelante asumió el pago del control de acceso, cuando adquirió la propiedad y firmó la escritura de condiciones restrictivas. Véase, pág. 39 de la transcripción.

El TPI hizo constar en la sentencia del caso de cobro de cuotas de mantenimiento, una certificación registral estipulada por las partes que certifica que la finca de los apelantes está gravada con las condiciones restrictivas establecidas en la Escritura Núm. 317, estipulada por las partes. Ambas partes estipularon en ese caso, que la Escritura Núm. 317 se inscribió en el Registro de la Propiedad, antes de que los apelantes adquirieran su propiedad. El tribunal citó la cláusula siguiente:

> ...The Association of Property Owners of Urbanizacion Paseos Reales Will determine the amount of monthly maintenance fee to be equally shared by all property owners. This obligation can and will be legally enforced against all property owners by Association of Property Owners.

Véase, pág. 39 del apéndice del recurso.

Los apelantes cuestionan que el TPI fundamentó la decisión en un reglamento que no fue el que el apelado le entregó como evidencia y que no fue presentado en la vista. No obstante, la juez de instancia hizo claro que decidiría conforme al reglamento que se admitió como evidencia. Véase, págs. 50-51 de la transcripción. Además, de que la decisión está realmente basada en la escritura otorgada en la que los apelantes se obligaron a cumplir con las condiciones restrictivas que incluyen el pago del sistema de acceso controlado.

Por otro lado, los apelantes sostienen que el Comité discrimina en su contra porque a los demás residentes se les permite tener un interruptor manual. El discrimen alegado no existe. Los apelantes son quienes pretenden un trato preferencial al de los residentes que si cumplen con el compromiso de pagar por el sistema de acceso controlado. El señor Medina aceptó que compró la propiedad con las restricciones de acceso establecidas en la Escritura Núm. 317 y leyó en voz alta la cláusula citada. Véase, pág. 38 de la transcripción. No obstante, los apelantes invocan la aplicación de *Caquias v. Asoc. Res. Mansiones Río Piedras,* supra. Sin embargo, existen diferencias significativas que impiden su aplicación a estos hechos. En *Caquias v. Asoc. Res. Mansiones Río Piedras,* supra, unos propietarios que nunca consintieron al cierre demandaron a la Asociación de Residentes, porque se negaba a entregarles el beeper y las llaves del portón peatonal. La urbanización en ese caso no estuvo sujeta a control de acceso desde sus inicios. Fue muchos años después que la Asociación estableció el control de acceso. Los hechos de este caso son distintos. El control de acceso está inscrito en el Registro de la Propiedad y los apelantes consintieron mediante escritura. Además, en *Caquias,* los residentes fueron privados de todas las formas de acceso. A los apelantes se les ha provisto las llaves que dan acceso a la urbanización y se les ha citado para informarle cómo se les dará acceso, pero se niegan a recibir las llaves y a comunicarse con el

Comité. Cuando el Tribunal Supremo de Puerto Rico dijo en *Caquias v. Asoc. Res. Mansiones Río Piedras,* supra*,* que todo propietario tendrá acceso en igualdad de condiciones, se refirió a los que no autorizaron el cierre conforme a la ley y a los que se les privó de todo acceso. El tribunal no se refirió a quienes, como los apelantes, no pagan, a pesar de que se comprometieron desde la compraventa al cierre y al pago de las cuotas de mantenimiento y a quienes se les ha provisto una forma de acceso, pero se niegan a aceptarla.

El injuction no procede, porque los apelantes no probaron que el apelado les causó un daño irreparable. Los apelantes son quienes se niegan a recibir la llave para entrar y salir de la urbanización. Al hecho de que los apelantes no han demostrado que el apelado le ha causado un daño irreparable, se añade que tienen a su disposición otros remedios adecuados en ley. Los apelantes pueden hacer sus reclamos sobre las deficiencias que alegan tiene el sistema de control de acceso y sobre su derecho a que se les entregue un beeper, mediante una demanda ordinaria e incluso peticionar remedios provisionales.

El apelante sostiene en el segundo señalamiento de error que no admitió que compró su propiedad con las restricciones que establece el contrato de compraventa y alega que esas expresiones las hizo su abogado. El segundo error no se cometió. El apelante aceptó que compró la propiedad con las restricciones de acceso establecidas en la escritura e incluso leyó en voz alta la cláusula citada. Véase, pág. 38 de la transcripción.

Este tribunal ordena a los apelantes el pago de $3,000.00 de honorarios de abogado, por la presentación de un recurso frívolo. La Regla 85(B) y (C) del Reglamento de Apelaciones, *supra*, nos autoriza a imponer los honorarios y las sanciones económicas que entendamos necesarias a la parte que presenta un recurso frívolo. La frivolidad de los apelantes consiste en su insistencia en utilizar el remedio

extraordinario del injunction para solicitar que se le entregue un interruptor manual (beeper), primeramente, cuando es diáfanamente claro que la urbanización está sujeta a condiciones restrictivas, según la abundante prueba[1] y teniendo otros remedios disponibles en ley. Su temeridad se acrecienta, debido a que es la parte apelante quien se autoinflige el daño, porque se niega a pagar por el mantenimiento de del control de acceso de solo $15.00, a pesar de que es una obligación que consta inscrita en el Registro de la Propiedad y que asumió por escrito cuando adquirió su residencia. Su conducta temeraria ha ocupado el tiempo y los recursos del tribunal y sometido a la apelada a una litigación innecesaria.

**IV**

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

De otra parte y fundamentados en la facultad que nos confiere la Regla 85(B) y (C) del Reglamento del Tribunal de Apelaciones, *supra*, imponemos al apelante $3,000.00 de honorarios de abogado por temeridad a favor de la parte apelada. Dicha suma deberá ser satisfecha en un término de sesenta (60) días a partir de la fecha de notificación de esta Sentencia. Se le ordena a dicha parte que notifique ante este foro el cumplimiento de dicho pago.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[1] Escritura de Condiciones Restrictivas; Reglamento de la Urbanización y Permiso de ARPe.